## INTELLECTUAL PROPERTY LICENSE AGREEMENT

This Intellectual Property License Agreement ("Agreement") is entered into between NIKE, Inc., an Oregon corporation, One Bowerman Drive, Beaverton, Oregon 97005-6453 ("NIKE") and Robert M. Lyden, 18261 Fallatin Loop, Aloha, Oregon 97007, having a taxpayer identification number of 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 ("Lyden");

### R E C I T A L S

**WHEREAS**, NIKE designs, develops, markets and distributes sports and fitness, footwear, apparel and sports equipment on a worldwide basis;

**WHEREAS**, Lyden is self-employed, and is currently a consultant to NIKE and other clients;

**WHEREAS**, Lyden previously conveyed non-patented and patent Disclosures to NIKE;

**WHEREAS**, NIKE and Lyden wish to address previous non-patented Disclosures from Lyden to NIKE; and

**NOW, THEREFORE**, in consideration of the promises and covenants herein contained, receipt of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

### ARTICLE I
### DEFINITIONS

1.1 "Disclosure(s)" shall mean oral communications, written communications, ideas, conceptions, developments, submissions, sketches, drawings, presentations, viewgraphs, inventions, memos, reports, knowledge, information, data, suggestions, improvements, patent applications, patent disclosures, patents, trademarks, know-how, proprietary information, trade secrets, business, marketing or sales information, information on materials, cost information, supplier information, samples and prototypes.

1.2 "Effective Date" shall mean the date the last of the parties affixes their signature hereto.

### ARTICLE 2
### GRANT

2.1 The "Intellectual Property and Know-how" subject to a non-exclusive license under Section 2.2 of the present Agreement

consists of the following Disclosures made by Lyden or his agents to NIKE prior to the Effective Date of this Agreement:

    2.1.1 Disclosures in a three-page Patent Office Disclosure Document bearing No. 223339, entitled "Steeplechase Racing Spike and Waterproof Athletic Shoe" and dated March 25, 1989; a letter from Rob Lyden to Deb Harness, dated May 9, 1989; a related cardboard or the like prototype; a two-page drawing of the same; two pages of photographs of the same on a newspaper dated May 8, 1989, a related prototype shoe provided to NIKE in 1989; and a memo from Lyden to Tom Horgan dated January 30, 1997 and entitled "Purchase of Inventions Relating to the Huarache";

    2.1.2 Disclosures in an abandoned United States patent application and its file history (including all information disclosure statements) entitled "Conformable Cushioning and Shock Absorbing Device", bearing Serial No. 07/864,442 and filed April 16, 1992; related prototypes shown to NIKE which included bladders including gels, and/or flowable materials having different viscosities, and/or open and closed cell foam and/or microspheres; a letter of April 17, 1990 from Lyden to Daniel Potter and a six-page document entitled "Practical Considerations Regarding the Cushioning of Performance Oriented Athletic Footwear" bearing a date of 3/14/93; a presentation, approximately in 1992, concerning frequency domain, shock and vibration isolation and cushioning theory; a document entitled "A Brief Technical Summary for a General Audience Regarding Shock and Vibration Isolation in Articles of Footwear With Particular Reference to the Present Invention, and Methods of Making the Same; a white box bearing Dow Corning reference no. 73386101 containing a letter from Lyden to Tom Horgan, dated 12/11/97, eight jars or bottles of various microspheres and fluids, a large plastic bag of foam/gel samples and a large plastic bag of foam/fluid samples; and the first full paragraph on page 7 to the end of page 9 in a memo from Lyden to Tom Horgan, dated January 30, 1997 and entitled "Purchase of Patents on Customized Footwear";

    2.1.3 Disclosures relating to microspheres and the making of foam materials in a letter from Lyden to Nicholas E. Westman, Esq., dated June 28, 1990, and in a memo from Lyden to Tom Horgan, dated January 30, 1997 and entitled "Purchase of Inventions Relating to Microspheres";

    2.1.4 A Disclosure entitled "Aerodynamic Athletic Apparel Background for U.S. Patent Application and/or Trademark Protection", dated August 31, 1989 and a related letter from Lyden to Tom McGuirk, dated May 8, 1990; and

    2.1.5 Disclosures relating to "Power Supply re Electric Devices" for possible heating, cooling or therapeutics mentioned in a Mutual Confidentiality Agreement of January 13, 1990 between NIKE and Lyden and letters of December 13, 1988; December 29, 1988; and January 15, 1990 from Lyden to NIKE.

2.2 Lyden hereby grants NIKE a perpetual, paid-up, worldwide, non-exclusive license to make and use the Intellectual Property and Know-how identified in Section 2.1 and its subsections and to offer to sell products and to sell products incorporating the same. This license is also a release retroactive to the date of the first disclosure of the Intellectual Property and Know-how identified in Section 2.1 and its subsections to NIKE. This license encompasses improvements and modifications to, as well as, derivatives of the Intellectual Property and Know-how which are made by and owned by NIKE.

## ARTICLE 3
## LIMITATIONS ON THE GRANT

3.1 The above identified Grant does not include permission for NIKE to make, use, sell or offer to sell products which would infringe claims of the following Lyden patents or future Lyden patent applications if they become patents, unless those claims are found invalid or unenforceable by a court, patent office or authorized arbitration:

| Title | Patent or Application Serial No. |
|---|---|
| Midsole Construction/ Shoe Insert | Pat. 4,674,206 |
| Personalized Footbed, Last & Ankle Support | Pat. 5,101,580 |
| Conformable Cushioning & Stability Device for Articles of Footwear | Pat. 5,203,793 |
| Method of Making Light Cure Component for Articles of Footwear | Pat. 5,632,507; and |
| Method of Making a Light Cure Component for Articles of Footwear | Appln. 08/862,598 (filed 5/23/97). |

3.2 With the exception of the Intellectual Property and Know-how license granted by Lyden to NIKE on the subject matter identified in Sections 2.1.1-2.1.5 herein, which supersedes this Section 3.2, the above-identified Grant does not include permission for NIKE to make, use, sell or offer to sell products which include

Disclosures made to NIKE by Lyden or his agents which are not publicly available (including not publicly available in any of the above-identified Lyden patents, or, when issued, the above-identified Lyden patent application, Serial No. 08/862,598 or future Lyden patent applications) and concerning:

    3.2.1 Certain written correspondence between Lyden and Daniel Potter from December 1987 through June 1989; or

    3.2.2 U.V. and/or visible light cure conformable devices or footwear components (including, but not limited to, the subject matter of Lyden patent application Serial No. 08/862,598).

3.3   The above-identified Grant does not include any rights for NIKE to use records of Lyden held by NIKE's Human Resources Department above those NIKE has under applicable laws.

## ARTICLE 4
## PAYMENT

Within ten (10) business days of the Effective Date of this Agreement or by December 31, 1997, whichever is earlier, NIKE shall pay Lyden sixty thousand and no/100 dollars ($60,000.00). If payment is not made in accordance with the aforementioned terms of Article 4, Lyden can declare this entire Agreement null and void.

## ARTICLE 5
## MISCELLANEOUS

5.1   To the extent not already owned by NIKE under (a) the Employee Invention and Secrecy Agreement between Lyden and NIKE, dated August 8, 1990; or (b) Lyden's legal duties to assign Disclosures to NIKE by virtue of his employment with NIKE and his responsibilities while an employee of NIKE, Lyden hereby conveys to NIKE a perpetual, paid-up, worldwide, exclusive license to make and use the intellectual property, know-how, related work product and Disclosures created by Lyden while working on the job during regular business hours during the term of Lyden's employment with NIKE between June 1, 1990 and September 10, 1996, and to offer to sell products and to sell products incorporating said intellectual property, know-how related work product, and Disclosures.

5.2   NIKE and Lyden understand Disclosures encompassed by Section 3.2.2 were presentations, discussions and demonstrations with prototypes, but that no prototypes were left with NIKE.

5.3   A document entitled "U.V./Light Cure Systems Presentation Rob Lyden (O.S.I.) April 19, 1993", having in it a meeting announcement and copies of Lyden patent nos. 4,674,208 and

5,101,580 and the written correspondence referred to in Section 3.2.1 were returned by NIKE to Lyden before the Effective Date of this Agreement.

5.4  This Agreement shall not be construed against the drafting party solely because of the submission of the Agreement to the other party.  Each party has had an opportunity to consult with its own legal counsel and has not relied upon representations or warranties of the other party except as set forth in this Agreement.

5.5  No waiver whether express or implied, of any breach of any term, condition, or obligation of this Agreement shall be construed as a waiver of any subsequent breach of that term, condition, or obligation or any other term, condition or obligation of this Agreement of the same or different nature.

5.6  It is understood and agreed by the Parties to this Agreement that if any part, term or provision of this Agreement is held to be illegal by United States courts or in conflict with applicable law, the validity of the remaining portions of provision shall not be affected, and the rights and obligations of the parties hereto shall be construed and enforced consistent with the intent of this Agreement.

5.7  This Agreement shall be interpreted in accordance with the laws of the state of Oregon and the parties hereby consent to the jurisdiction and to venue in the courts in the state of Oregon.

**IN WITNESS WHEREOF, THE PARTIES HERETO HAVE CAUSED THIS AGREEMENT TO BE DULY EXECUTED, IN DUPLICATE, AS OF THE EFFECTIVE DATE.**

"Lyden"  
*/s/ Robert M. Lyden/*  
Robert M. Lyden  
Date: 12/18/97

"NIKE"  
*/s/ Jerry Kover/*  
Name: Jerry Kover  
Title: Dr Global Footwear  
Date: 12/18/97