

July 10, 1998

Mr. Robert Lyden
18261 Fallatin Loop
Aloha, OR  97007

Dear Rob:

This letter confirms NIKE will not be renewing your Consulting Agreement of September 10, 1996 when it expires on September 10, 1998.  Also, as we discussed, NIKE will not exercise its option to apply to you a one-year covenant not to compete.  See Section 2.4.  As I am sure you are aware, the provisions of Article IV. (Ownership of Inventions while working under the Agreement) and Article V. (Confidentiality) remain in full force and effect after September 10, 1998.  See Section 2.5.

Please let me know if you have any questions.

Very truly yours,

Thomas M. Horgan

TMH/mes

NIKE, INC. ONE BOWERMAN DRIVE, BEAVERTON, OR 97005-6453 TEL: 503-671-6453

THOMAS M. HORGAN ASSISTANT GENERAL COUNSEL, DIRECT DIAL: 503-671-2631 FAX: 503-646-6926

**CONSULTING AGREEMENT**

This Agreement is made and entered into by and between NIKE, Inc., an Oregon corporation, having an address of One Bowerman Drive, Beaverton, Oregon 97005 ("NIKE") and Robert M. Lyden, an individual residing at 18261 S.W. Fallatin Loop, Aloha, OR. 97007, Phone number: (503) 649-4853, Social Security No. 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. ("CONSULTANT").

W I T N E S S E T H

WHEREAS, NIKE represents that it is engaged in the innovation, design, improvement, manufacture, distribution and sale of sports and fitness products, gas barrier polymers, and gas-filled bladders for industrial and automotive use (hereinafter called "NIKE's Area of Business"); and

WHEREAS, CONSULTANT represents that he is an inventor, designer and developer of sports and fitness products, gas barrier polymers, and gas-filled bladders for industrial and automotive use; and

WHEREAS, NIKE desires to retain CONSULTANT and CONSULTANT desires to perform certain consulting and advisory services for NIKE upon the terms and conditions provided for in this Agreement; and

NOW, THEREFORE, in consideration of the mutual promises herein set forth and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

ARTICLE I. ENGAGEMENT OF CONSULTANT

1.1  NIKE hereby appoints and engages CONSULTANT and CONSULTANT hereby accepts the appointment and engagement as advisor and consultant to NIKE.

1.2  NIKE and CONSULTANT shall periodically jointly define invention, design and development projects relating

to NIKE's Area of Business (hereinafter called the "Projects"). A list of proposed Projects, subject to periodic revision, is attached hereto as Appendix A, and by this reference is hereby incorporated herein.

1.3 CONSULTANT shall keep adequate records of all work done relating to the Projects and shall provide NIKE with brief written milestone progress reports no later than the last day of each month or at such other times as NIKE may reasonably request.

1.4 CONSULTANT agrees that this is Work Made for Hire.

1.5 During the term of this Agreement, CONSULTANT shall not work for any other person, firm, corporation, organization or entity in NIKE's Area of Business without NIKE's approval. Two exceptions to the restriction in the previous sentence are: 1) CONSULTANT may license, make, use or sell the subject matter of any intellectual property previously developed by CONSULTANT, owned by CONSULTANT and identified in Section 1.6; and 2) Lyden may be employed by an individual, government or a non-profit institution as a teacher or as a coach of track or cross-country. A request by CONSULTANT for approval of any other exceptions to the restriction in the first sentence of this section will be evaluated with respect to NIKE's current and planned activities in NIKE's Area of Business. Such approval may not be unreasonably withheld. Lyden may be employed by Steve Sims, Inc., the personal health and wellness industry, e.g., Nautilus, and the medical industry on projects outside of NIKE's Area of Business.

1.6 CONSULTANT represents that the following is a complete list of all inventions, developments, improvements and discoveries which relate to NIKE's Area of Business, or NIKE's products, research or a reasonable expansion thereof made or conceived by CONSULTANT prior to CONSULTANT's employment by NIKE in May of 1990, or under the terms of CONSULTANT'S original Employment Agreement, dated August 8, 1990, attached hereto as Exhibit B and by this reference

incorporated herein, a) any intellectual property identified in Sections 8 and 11 of CONSULTANT'S Employment Agreement; b) three issued patents relating thereto, U.S. 4,674,206, U.S. 5,101,580, U.S. 5,203,793; c) an abandoned U.S. patent application Serial No. 07/864,442, filed April 6, 1992, entitled "Conformable Cushioning and Shock Absorbing Device"; d) an abandoned U.S. Patent Application Serial No.08/074,771, filed June 9, 1993, entitled "Light Cure Conformable Device for Articles of Footwear"; e) a pending U.S. Patent Application Serial No. 08/275,642, filed July 14, 1994, entitled "Method of Making Light Cure Component for Articles of Footwear", and divisional or continuing applications relating thereto; f) Lyden's writings on health, wellness, Athletics and sports psychology including "Athletics the Way of Five Rings", Copyright 1987, and "The Way of Athletics", ___; and g) film(s) with which Lyden is associated. NIKE makes no representations as to the validity or accuracy of the representations of Lyden in this section.

## ARTICLE II. TERM

2.1 Subject to the provisions for termination as hereinafter provided, the term of this Agreement shall be two (2) years from the effective date of this Agreement. The parties may renew the Agreement, provided both parties notify each other of their desire to extend the Agreement at least sixty (60) days prior to each scheduled expiration date.

2.2 This Agreement cannot be terminated earlier than two (2) years without good cause. If either party terminates the Agreement prior to that time without good cause, that party shall owe the other an amount equal to the consulting fees that NIKE has agreed to pay CONSULTANT over the upcoming twelve (12) month period or up to the

Page 3 - Consulting Agreement

termination date of the Agreement, whichever is less. Such amount shall be due in equal monthly payments over the period remaining on the agreement or over one (1) year from the termination date, whichever is less. If such payments are due from NIKE and paid by NIKE, CONSULTANT shall at least be subject to Section 1.5 during this period. If NIKE terminates the Agreement without good cause, NIKE hereby grants CONSULTANT the option to waive all or a portion of NIKE's payment obligations under Section 2.2 and, for the period of such waiver, to be free of obligations under Sections 1.5 and 2.4.

2.3 If at any time NIKE believes that CONSULTANT has not made sufficient progress with regard to proposed projects, NIKE shall give notification to CONSULTANT of its belief together with an indication of the progress that NIKE believes is required and which can be reasonably attained in three months. If CONSULTANT does not achieve the progress indicated by NIKE within three months of the notification by NIKE, such failure shall be good cause for termination of the Agreement under this article.

2.4 CONSULTANT hereby grants NIKE the option to apply to CONSULTANT a one (1) year covenant not to compete in NIKE'S Area of Business, subject to Section 1.5, upon termination or expiration of this Agreement. If NIKE exercises this covenant to not compete option, payment shall equal consulting fees paid CONSULTANT over the previous twelve (12) months, and shall be made in twelve (12) equal installments on the first day of each month.

This not to compete provision is subject to NIKE's option to waive all or any portion of the one (1) year time period of non-competition following termination or expiration of this Agreement by giving Consultant written notice of such election not less than thirty (30) days prior

Page 4 - Consulting Agreement

to the effective date of the waiver. In that event, NIKE shall not be obligated to pay Consultant under this paragraph for any months as to which the covenant not to compete has been waived. NIKE agrees to act in good faith in its exercise of the above-noted options.

2.5 Notwithstanding expiration or termination of this Agreement by either CONSULTANT or NIKE, the provisions of Article IV. and V. below shall remain in full force and effect.

ARTICLE III. COMPENSATION FOR CONSULTING SERVICES

During the term of this Agreement, NIKE shall pay or reimburse CONSULTANT, as the case may be:

(a) Five thousand dollars ($5,000.00) per month for up to one hundred twenty hours (120) per month of Consulting work with a minimum guarantee of sixty thousand dollars ($60,000.00) annually with payments made on the first of each month, with annual adjustments for inflation consistent with the then current Consumer Price Index, and with the further possibility of an annual merit increase for outstanding performance, at the discretion of NIKE; and

(b) Reasonable lodging, meal and transportation expenses incurred whenever CONSULTANT travels on NIKE business. CONSULTANT shall submit to NIKE itemized expense reports accompanied by receipts within thirty (30) days of incurring the expense. Reimbursement payments shall be made by NIKE to CONSULTANT within thirty (30) days after receipt and approval thereof by NIKE.

(c) For the necessary materials and other expenses associated with the proposed projects, NIKE will reimburse

CONSULTANT for the reasonable expenses incurred.  Any single expense over five hundred dollars ($500) must be pre-approved by NIKE.  For any single expense over one thousand dollars ($1,000), NIKE will advance the money for such expense to CONSULTANT.  Within thirty (30) days of incurring the expense, CONSULTANT shall submit to NIKE itemized expense reports accompanied by receipts for all items in excess of twenty-five dollars ($25).  Reimbursement payments shall be made by NIKE to CONSULTANT within thirty (30) days after receipt and approval thereof by NIKE.

## ARTICLE IV. OWNERSHIP

4.1  CONSULTANT agrees that any designs, sketches, discoveries, improvements, modifications or inventions ("Inventions") which CONSULTANT shall make or discover while working under this Agreement or any extension thereof and pursuant thereto shall be and remain the sole and exclusive property of NIKE.  NIKE shall not own Inventions not relating to NIKE's Area of Business which CONSULTANT shall make or discover while not working under this Agreement.

4.2  If NIKE shall determine to seek patent, copyright or other protection with respect to such Inventions, CONSULTANT shall cooperate fully and promptly with NIKE during the term of and after termination or expiration of this Agreement in the application for patents or other protection therefor in the U.S.A. and/or foreign countries in the name of NIKE or its assignee, and CONSULTANT shall promptly execute and deliver such instruments and documents as may be necessary or desirable to accomplish such end.

## ARTICLE V. CONFIDENTIALITY

5.1  CONSULTANT shall treat as confidential and shall not either directly or indirectly (a) divulge, disclose, communicate or make available to any third party, (b) use or

(c) publish any information which is secret and confidential to NIKE. Such information, it is understood, may include, but is not limited to, knowledge and data relating to products, processes, services, machines, compounds and compositions, materials, equipment, lasts, formulae, business plans and marketing and sales positioning strategies, communications strategies, models, concepts, approaches, ideas or other information originated, owned, controlled or possessed by NIKE and also includes any other information which (i) NIKE is required to keep confidential as the result of secrecy agreements between NIKE and third parties, (ii) is marked by NIKE as confidential or (iii) is otherwise treated by NIKE as confidential. It is understood and agreed that this restriction applies to all confidential information previously disclosed to or observed by CONSULTANT.

    5.2 The requirement of confidentiality shall not apply to:

    (a) information which CONSULTANT can demonstrate was already known to him prior to the date he received it, provided such knowledge is corroborated by competent proof.

    (b) information which, at the time of disclosure or later, is published or becomes otherwise available to the general public as part of the public domain through no act or failure to act on the part of CONSULTANT and without breach of this Agreement; and

    (c) information which CONSULTANT can demonstrate came into his possession from third parties who have a bona fide right to make such information available without restriction.

    5.3 CONSULTANT's secrecy obligations hereunder shall continue during the term of this Agreement and for three (3) years thereafter.

    5.4 Upon expiration or termination of this Agreement, or when so requested by NIKE, CONSULTANT shall surrender promptly to NIKE all data, documents, materials and any

other tangible property containing confidential information which are in CONSULTANT's possession or control or within CONSULTANT's knowledge of their location, including all originals, copies, reprints and translations thereof or any other tangible property containing information of a confidential, material or important nature applicable to the business of NIKE, its customers and the manner of conducting its business.

## ARTICLE VI. GENERAL PROVISIONS

6.1 <u>Notices.</u>  Any notices, statements or reports required to be given hereunder shall be deemed sufficiently given if sent by registered or certified mail or courier service, postage paid:

    to CONSULTANT:    Robert M. Lyden
                                 18261 S.W. Fallatin Loop
                                 Aloha, OR. 97007
                                 Phone: (503) 649-4853

    to NIKE                 Tom Horgan
                                 Legal Department
                                 NIKE, Inc.
                                 One Bowerman Drive
                                 Beaverton, OR   97005-6453

    with copy to:       Darcy Winslow
                                 NIKE, Inc., MJ-4
                                 One Bowerman Drive
                                 Beaverton, OR   97005-6453

or to such other address or addresses which one party gives by written notice to the other.

6.2 <u>Severability.</u>  Should any part or provision of this Agreement be held unenforceable or in conflict with the

Page 8 - Consulting Agreement

applicable laws of any jurisdiction of the United States, such part or provision shall be deemed severable from this Agreement and the validity of the remaining parts or provisions shall not be affected by such holding.

    6.3  <u>CONSULTANT's Status.</u>  The parties agree that CONSULTANT shall be at all times an independent consulting contractor and not a NIKE employee, and as such, CONSULTANT is responsible for: (a) maintaining CONSULTANT's own expense records' (b) paying self-employment taxes, income taxes and other similar taxes and assessments; (c) providing and paying for CONSULTANT's own insurance, office space and supplies, stationery and similar incidentals; and (d) complying with all relevant local, state and federal laws affecting CONSULTANT as an independent contractor.

    6.4  <u>Waiver.</u>  Waiver of any provision or breach hereof in any instance shall not be deemed a waiver of any other past or future breach of the same provision or of any other provision or of the entire Agreement.

    6.5  <u>Entire Agreement/Modification.</u>  The terms, conditions and provisions of this instrument constitute the entire agreement between the parties with the exception of mutual confidentiality agreements as follows: a) Aerodynamic Apparel, January 13, 1990; b) Comformable Systems, January 13, 1990; c) Power Supply Re: electric devices, January 13, 1990; d) Conformable Cushioning and Shock-Absorbing Device, September 18, 1992; e) Conformable Footwear Systems, April 19, 1993; and f) Conformable Footwear Systems, June 13, 1996; and shall supersede all previous communications, negotiations, proposals, representations, conditions, warranties or agreements, either oral or written, between the parties hereto with respect to this Consulting Agreement. This Agreement may not be enlarged, modified or altered except in writing signed by CONSULTANT and NIKE.

    6.6  <u>Other Agreements.</u>  CONSULTANT represents that no provision of this Agreement will violate any other contract or agreement which CONSULTANT may have with any other

Page 9 - Consulting Agreement

person, firm, corporation or entity.  NIKE has relied upon such representation in entering into this Agreement.

    6.7  <u>Assignment.</u>  Neither this Agreement nor any of the rights or obligations hereunder shall be assigned by CONSULTANT or NIKE without the prior written consent of the other party, except for merger of acquisition.

    6.8  <u>Governing Law.</u>  This Agreement shall be interpreted and construed under and the legal relations covered herein shall be determined in accordance with the laws of the state of Oregon.

    6.9  <u>Captions.</u>  Captions are inserted for convenience of reference only and shall not be considered as being of any significance whatsoever in the construction and interpretation of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be effective as of the date the last of the parties affixes their signature hereto or the first business day after CONSULTANT's termination date as an employee of NIKE, whichever is later.

"CONSULTANT"                    "NIKE"

By: _____    By: _____
Robert M. Lyden                Name: DARCY S. WINSLOW
                               Title: DIR. of ADVANCED R&D

Date: 9/10/96                  Date: 9/10/96

Page 10 - Consulting Agreement

## Rob Lyden - Consultant
Project Agenda (Actual and Potential Projects)
Updated 8/23/96

### Equipment Division - *Hockey/Skates*
1. * Air Wheels patent - completion and filing: specifics of project to be detailed pending Dan Potter's return, week of 8/26/96.
2. Lighter, less expensive, more durable while retaining performance parity of current product/wheel bearings; includes prototyping, patent application, technical write-up. Project brief to be completed by Brian Stewart prior to project start-up.
3. Develop prototype in-line skates incorporating an air bag suspension system for providing vibration isolation and a tuned mechanical response; including patent application, technical write-up.

### Footwear Division
1. Develop concepts and theory validation via initial prototyping regarding adjustable width footwear, location of adjustability will be activity dependent.
2. Develop concepts and validation of activity dependent traction requirements.
3. Possible interaction, involvement or contribution to Track and Field projects (further discussion required with ARG team, when appropriate).
4. Possible interaction, involvement or contribution to ATE Intelligent Products and Services, specifically Timing projects (further discussion required with Bruce Kilgore, when appropriate).

### Eyewear/Bats/Equipment: TBD, pending discussions with Ray Riley and Richard Avis
1. Develop prototype of anti-fogging eyewear frame, including patent application, technical write-up.
2. Develop superior eyewear lens re: thickness and negligible prismatic distortion while meeting FDA impact requirements, including patent application, technical write-up.
3. Develop prototype baseball bat which has multiple wall construction/metal surface treatments, providing greater resiliency, including patent application, technical write-up.

### Miscellaneous Potential Subject Areas
1. B-List projects identified in APE
2. Cushioning
3. Fit

* Denotes immediate project start-up as of Sept. 3, 1996.

## EMPLOYEE INVENTION AND SECRECY AGREEMENT

I, Robert M. Lyden, understand that as an employee of Nike, Inc. or any of its subsidiaries (hereinafter called "Nike"), I may obtain access to or acquire information confidential to Nike and may conceive or make inventions which are related to Nike's interests. Accordingly, in consideration of my employment or continued employment by Nike and the compensation received or to be received therefor by me from Nike, I accept and agree to the following obligations to Nike:

1.  I agree to disclose promptly and in writing to Nike all inventions which are conceived or made by me during the term of my employment with Nike and which relate to Nike's business, products, research or a reasonable expansion thereof. I agree that such inventions shall be Nike's exclusive property, whether or not patent applications are filed thereon, and I hereby assign and agree to assign to Nike all right, title and interest in and to such inventions.

2.  I agree to perform any lawful acts and execute, at Nike's request and at no expense to me, any and all lawful documents and instruments Nike considers reasonably necessary to perfect and protect its right, title and interest in and to inventions covered by Section 1. above, and any U.S. and/or foreign patent applications covering the same. I further agree that this obligation shall continue after the termination of my employment with Nike.

3.  I agree that unless I have Nike's written authorization, I shall not, either during or after my employment with Nike, (a) disclose to any third party, (b) use or (c) publish any information which is secret and confidential to Nike. Such information, it is understood, may include, but is not limited to, knowledge and data

Page 1.   EMPLOYEE INVENTION AND SECRECY AGREEMENT        90.0731

relating to processes, products, machines, compounds and compositions, formulae, lasts, molds, designs and design concepts, business plans and marketing and sales information originated, owned, controlled or possessed by Nike. I further understand that as a guide I am to consider information originated, owned, controlled or possessed by Nike, which is not disclosed in printed publications designated by Nike to be available for distribution outside Nike, as being secret and confidential to Nike. In instances wherein doubt exists in my mind as to whether information is secret and confidential to Nike, I will request in writing an opinion from Nike.

4.   I agree that items (including, but not limited to, products, data sheets, manuals, reports, drawings, memoranda, blueprints, notes, records, plots, chemical formulations, sketches, plans, photographs, schematics and other tangible items) which I prepare, make, possess or to which I obtain access as a result of my employment with Nike shall at all times be recognized as Nike's exclusive property. I further agree that at no time, without Nike's written authorization, shall I use, publish or make such items available to third parties and that I shall, upon leaving Nike's employ or at any time upon Nike's request, deliver promptly to Nike all such items (including copies, reproductions and translations thereof) which I have in my possession, custody or control or am aware of their location.

5.   I agree that Nike shall be entitled to shop rights with respect to any invention conceived or made by me which is not within the scope described above, but which was conceived or made on Nike's time or with the use of its facilities or materials.

Page 2.    EMPLOYEE INVENTION AND SECRECY AGREEMENT        90.0731

6. This Agreement shall bind me and my heirs, executors, administrators and personal representatives and shall extend to Nike's successors and assigns.

7. This Agreement shall be interpreted according to the laws of the state of Oregon.

8. This Agreement is voluntarily entered into and supersedes all prior agreements between Nike and myself with respect to the matters set forth above, excepting the two Mutual Confidentiality Agreements (Nike Form No. 89.0112) between the parties, entered into January 13, 1990, pertaining to (a) Conformable Systems and (b) Aerodynamic Apparel.

9. In the event any portion of this Agreement shall be unlawful or invalid, all other portions thereof shall remain in full force and effect.

10. There is no other agreement to assign inventions now in existence between myself and a third party covered by Section 1. of this Agreement.

11. I warrant and represent that the following is a full and complete list of all inventions, developments, improvements and discoveries which relate to Nike's business, products, research or a reasonable expansion thereof made or conceived by me prior to my employment by Nike (hereinafter called "Prior Inventions"):

    a. U.S. Patent No. 4,674,206, issued June 23, 1987, entitled "Midsole Construction/Shoe Insert".

    b. U.S. Patent Application S.N. 07/410,074, filed September 20, 1989, entitled "Personalized Footbed, Last, and Ankle Support".

Page 3.    EMPLOYEE INVENTION AND SECRECY AGREEMENT    90.0731

      c.  U.S. Patent Application S.N. _____, filed _____, entitled _____ and tentatively described as a "Conforming and Shock Absorbing Structure". The application is not yet on file and is being prepared by Nickolas E. Westman, Esq. of the law firm of Kinney & Lange, P.A., Suite 1500, 625 Fourth Avenue South, Minneapolis, Minnesota (File No. L249.12-0001).

      d.  The following documents held in the offices of Kinney & Lange, P.A.:

      1)  Disclosures by me to Nickolas E. Westman, Esq. dated November 27, 1989, December 5, 1989, January 3, 1990, January 5, 1990 and January 6, 1990.

      2)  Disclosures by me to Nickolas E. Westman, Esq. dated May 7, 1990, entitled "Aerodynamic Athletic Apparel", "Athletic Training Device", and "Waterproof Articles of Footwear".

      3)  Disclosures by me to Nickolas E. Westman, Esq. dated June 28, 1990, relating to "Coated Microspheres".

Applications, divisions, continuations-in-part and foreign applications of any of the Prior Inventions shall be deemed outside the scope of this Agreement, and I am free to license, make, use and sell the subject matter of these Prior Inventions without any claim or restriction by Nike.

Robert M. Lyden
Employee

*Robert M. Lyden*

Address

16384 S.W. Estuary Dr. Apt #203
City, State, Zip
Beaverton, OR. 97006

Witness

*Daniel R. Porter*

8-8-90
Date

Page 4.   EMPLOYEE INVENTION AND SECRECY AGREEMENT   90.0731