## OPTION AGREEMENT

This agreement is made between Robert M. Lyden of 18261 S.W. Fallatin Loop, Aloha, Oregon 97007, (hereinafter referred to as Licensor) and FILA Sport S.p.A., of Via Cesare Battisti 26, 13900 Biella, Italy (Licensee).

Whereas Licensor represents that he has made applications for letters of patent for improvements in articles of footwear, methods of making the same and methods of conducting retail and Internet business regarding the same,

Whereas the Licensee desires to evaluate the commercial utility and viability of the Inventions and to enter into a license agreement for and/or an assignment of the rights to the Inventions of Licensor as defined below, and

Whereas Licensee and Licensor have entered into a Mutual Confidentiality Agreement,

IT IS THEREFORE AGREED:

1. Definitions:

(a) Inventions shall mean the following U.S. patent applications of Robert Lyden and any foreign patent applications or patents corresponding thereto:

(1) Article of Footwear Having a Spring Element and Selectively Removable Components;

(2) Customized Article of Footwear and Method of Conducting Retail and Internet Business; and

(3) Future patent applications relating to the general subject matter of the above-noted patent applications referred to in 1(a)(1), 1(a)(2) which are capable of being filed during the term of this Agreement.

(b) Confidential Information shall have the meaning set forth in the Mutual Confidentiality Agreement executed between Licensor and Licensee in the summer of 2000, and said Agreement shall remain in full force and effect during the term of this Agreement and thereafter for the term set forth in the Mutual Confidentiality Agreement

2. Term

This Agreement shall have an Initial Term, which shall be effective from the date of signing until December 31, 2000, and shall contain a Negotiation Period as provided in Paragraph 4 below. The parties may extend the Initial Term and/or the Negotiation Period an additional three months if mutually agreeable to Licensor and Licensee. Such extension shall not be unreasonably denied by either Licensor or Licensee.

3. Disclosure

During the effective period of this Agreement, and at times convenient to the Licensee, Licensor shall make a full disclosure of the Inventions to those employees, agents and contractors of Licensee and those of Licensee's parent, subsidiary and affiliated companies who shall be designated by the Licensee and its representatives ("Licensee's Representatives"). The Licensor shall further explain, upon request, in full the detailed structure and operations of the Inventions and relevant Business Practices, and shall answer to the best of his ability all questions asked by Licensee's Representatives which may advance his technical understanding of the Inventions. Licensor shall submit to the Licensee's Representatives all writings relating to the Inventions, and shall permit them to copy such writings. Licensor shall furnish upon request additional information and assistance reasonably necessary to enable Licensee's Representatives to understand and evaluate the novelty, utility and marketability of the Inventions. All reasonable expenses incurred by

Licensor in furnishing the assistance and information required under this paragraph shall be paid for by Licensee.

4. Option

Licensor grants Licensee during the Initial Term of this Agreement (1) the right to use the Inventions to evaluate the commercial utility and viability of the Inventions and (2) an irrevocable option to acquire a worldwide license or assignment for the manufacture, use and sale of the Inventions (the "Option"). Upon the termination of the Initial Term, Licensee shall provide written notice to Licensor of its intentions regarding the Option. If the notice states Licensee has decided to exercise the Option, the parties shall negotiate in good faith through January 31, 2000 (the "Negotiation Period"), to reach a final licensing agreement for the Invention. During the Negotiation Period, Licensor shall not share the Inventions nor negotiate with any other person or entity regarding the Inventions.

5. Representations:

Licensor represents and warrants as follows:

(a) Licensor is the exclusive owner of all rights to the Invention and has the right to grant this option and the right to grant a license or assignment for the manufacture, use and sale of the Inventions, and further, has executed no agreement, present or past, with any third parties in conflict herewith and has not granted to any other person, firm or corporation any right, license, shop right or privilege.

(b) The Inventions, their improvements and writings relating thereto that are not disclosed in the patent applications are considered to be Confidential Information, and during the period of this option, Licensor shall not reveal the Inventions, the improvements thereto,

nor the writings relating thereto, except as required by this Agreement or as permitted in writing by Licensee.

(c) During the Initial Term of this Agreement and the Negotiating Period, Licensor shall not enter into negotiations with or grant to any other person, firm, or corporation any right, license, shop right or privilege in the Inventions, their improvements, or writings relating thereto.

(d) During the Initial Term of this Agreement and the Negotiation Period, Licensor shall file, prosecute, and hold in his own name all applications and patents issuing from such applications relating to the Inventions and their improvements assigned to Licensee.

6. Duties of the Licensee during the option period.

During the period of this option, Licensee shall diligently investigate the nature and use of the Inventions including the marketability thereof, determine whether to exercise the option granted herein, receive and hold in confidence all Confidential Information and assistance required by this Agreement, and take all reasonable measures to prevent disclosures to others.

7. Duties of Licensee upon lapse of the option:

If the option granted by Paragraph 4 is not exercised, the duties of the Licensee shall be as follows:

(a) It shall promptly return all writings submitted by Licensor to Licensee's representatives, but it may retain copies of such writings without disclosing the same to any third party without written authorization of the Licensee.

(b) It shall instruct its employees to hold in confidence all Confidential Information received from Licensor until such information is available to the public generally or to its competitors.

(c) If Licensee does not enter into a license agreement, exclusive or nonexclusive, Licensee agrees to transfer to Licensor all rights, title and interest in the prototypes developed during the term of this Agreement [by Licensee]. Licensee's receipt of the prototypes developed during the terms of this agreement shall not create any agency relationship between Licensor and Licensee nor shall it create any license for any trademark, logo, insignia or design of Licensee unless authorized in writing by Licensee. Licensor shall not adopt or use any mark, logo, insignia or design that is, or is likely to be, confusingly similar to or could cause deception or mistake with respect to any trademarks of Licensee. Any unauthorized use of, manufacture, sale, advertising or distribution of the prototypes or any products corresponding thereto or developed from such prototypes by licensor or by any third party authorized by Licensor shall be the sole responsibility of Licensor including but not limited to any loss, liability, claims, suits, actions, proceedings, judgments, awards, damages and expenses (including attorneys' fees) that Licensor or such third party may cause to any other person or party, or due to infringement of any patents, trademarks or copyrights, and Licensee shall be held harmless for the same. Licensor further acknowledges that the Licensee has no adequate remedy under this Agreement or at law in the event that the Licensee were to use the marks, logo, insignia or design of Licensee in a manner not authorized by this Agreement and the Licensee would, in such circumstances, be entitled to injunctive or other equitable relief, including interlocutory and preliminary injunctive relief. Licensor also acknowledges that Licensee's rights and remedies under this Agreement and

under law are intended to be cumulative, and not mutually exclusive. At its own cost and expense, the Licensor shall defend, indemnify and hold the Licensee harmless (including the Licensee's subsidiaries, affiliates, stockholders, directors, officers, employees and agents) from and against any and all loss, liability, claims, suits actions, proceedings, judgments, awards, damages and expenses (including attorneys' fees) that they, or any of them may incur or suffer by reason of the Licensor's manufacture, use, sale, advertising or distribution of the prototypes or any products resulting therefrom. The Licensee shall promptly notify the Licensor of any claim or notice of claim made which would be subject to this paragraph and the Licensee may, at its own expense seek counsel of its own choice to represent it or its affiliates and related third parties in such matter. If the Licensor shall fail to promptly, professionally and diligently defend the Licensee, the Licensee may, but shall have no obligation to, assume the conduct of the defense or settle the claim without the Licensor's consent and the Licensor shall thereupon be fully responsible for the costs and expenses for the defense and/or settlement, including, without limitation, counsel fees and expenses (including expert fees) and any judgments, settlements and awards incurred by Licensee. Anything to the contrary notwithstanding, at its election, the Licensee shall have the sole control of all such proceedings and settlements, at the expense of the Licensor if (a) the same would, in the sole judgment of the Licensee, adversely affect the marks, logo, insignia or designs of Licensee, or (b) an adverse result would, in the sole judgment of the Licensee, irreparably damage the Licensee's goodwill, or (c) the Licensor shall fail to provide to the Licensee, upon request, with proof reasonably satisfactory to the Licensee, of the Licensor's financial responsibility or the responsibility of insurers for any judgment which may be entered or, absent such proof, with a satisfactory surety bond to assure such payment. Use of

the prototypes by Licensor shall exclude promotional activities, publication and related activities unless authorized in writing by Licensee. Licensee further has the right to remove all logos, marks and insignia from such prototypes prior to transfer to Licensor.

8. Duties of Licensor Upon Lapse of the Option:

If the option granted by Paragraph 4 is not exercised, Licensor shall be under no obligation to Licensee except as provided for in Paragraph 9 below.

9. Confidentiality

Licensor and Licensee each hereby agree that the terms and conditions of this Agreement and the existence of this Agreement shall be strictly confidential for a period of five (5) years from the date of signing of this Agreement and will not be disclosed to any third parties without the mutual written consent of Licensor and Licensee.

10. Consideration

In consideration for this Agreement, Licensee shall pay to Licensor the total sum of US$25,000, the receipt of which shall be acknowledged by Licensor. Licensee shall pay Licensor within thirty (30) days from the date of signing by the Licensor. This payment shall be credited towards payments due to Licensor under the license agreement or assignment to be acquired referred to in Paragraph 4, if and when such license or assignment becomes operative.

11. Liquidated Damages

The Licensor and Licensee mutually acknowledge that it would be difficult to ascertain the exact amount of damages incurred by the Licensee in the event of any breach or default of the warranties described in paragraph 5 and that, in addition to all of the remedies provided elsewhere in this Agreement or by law. Accordingly, Licensee shall be entitled to recover from Licensor, as liquidated damages, the sum of US$250,000 after written notification thereof by Licensee to Licensor, it being agreed that said sum represents a reasonable estimate of the damage that would accrue to the Licensee, reserving to the Licensee the right to recover such other and addition damages as may be proved by law.

12. Arbitration

(a) Any controversy or dispute arising out of or in connection with this Agreement, its interpretation, performance or termination, but excluding validity or enforceability of the Inventions, that the Licensor and Licensee are unable to resolve within ninety (90) days after written notice by one party to the other of the existence of such controversy or dispute, shall be submitted to arbitration. The dispute or controversy shall be finally settled by arbitration in accordance with the rules of The American Arbitration Association, as modified in this paragraph. Such arbitration shall take place in English and in Baltimore, Maryland before a panel of three arbitrators, the first of which shall be selected by Licensee, the second being selected by the Licensor and the third of which shall be selected by the first and second arbitrators so selected. The arbitrators shall apply the laws of the state of Maryland and shall render a written decision with reasons therefore within three (3) months from the date that this matter is submitted to arbitration.

(b) The institution of any arbitration hereunder shall (1) relieve Licensee of its obligation to make payments to Licensor required by the terms of this Agreement during the continuance of the arbitration proceeding and (2) prevent Licensor from applying for and obtaining from a court a temporary restraining order and/or preliminary injunctive relief pending the outcome of the arbitration.

(c) The decision of the arbitrator shall be binding and conclusive on the parties and they shall comply with such decision in good faith. Each party hereto hereby submits itself to the jurisdiction of the court of the State of Maryland, but only for entry of judgement with respect to the decision of the arbitrators hereunder, including injunctive relief if appropriate to render effective the arbitrators' decision. Notwithstanding the foregoing, judgement on the award by the arbitrators may be entered into any court of the State of Maryland or any court having jurisdiction. If traditional enforcement or review of the arbitrators' decision is sought, the prevailing party shall be entitled to its costs and reasonable attorneys' fees up to a maximum of US$200,000 in addition to any amount of recovery ordered by the court.

13. The parties acknowledge and agree any services to be performed under this Agreement shall occur solely within the United States of America.

14. Licensor understands and agrees that in order for Licensee to make paymer' Licensor, Licensor shall be responsible for providing to Licensee invoices and any req' declaration(s) that Licensor is subject to taxation under the laws of the United Sates of America.

15. Any notice to be given pursuant to the terms of this Agreement shall be in and shall be hand-delivered, mailed by first class US mail or sent via facsimile at the addresses below.

Robert M. Lyden
18261 S.W. Fallatin Loop
Aloha, Oregon 97007
Fax # (503) 649-4853

Craig Wojcieszak
FILA USA, Inc.
83 Pine Street
Peabody, MA 01960
Fax # (978) 536-5397

Copy to:

Franco Maula
FILA SPORT S.p.A.
Legal Department
Viale Cesare Battisti 26
13900 Biella, Italy
Fax # 011 390153506297

IN WITNESS WHEREOF the parties have signed this Agreement.

_____  October 13, 2000
Robert M. Lyden              Date            FILA SPORT S.p.A.
18261 S.W. Fallatin Loop
Aloha, OR 97007

                                             _____ 04/10/2000
                                             Enzo Zanchetta              Date

OPTION AGREEMENT: Negotiation Period Extension

This agreement is made between Robert M. Lyden of 18261 S.W. Fallatin Loop, Aloha, Oregon 97007, (hereinafter referred to as Licensor) and FILA Sport S.p.A., of Via Cesare Battisti 26, 13900 Biella, Italy (Licensee).

Whereas Licensor represents that he has made applications for letters of patent for improvements in articles of footwear, methods of making the same and methods of conducting retail and Internet business regarding the same,

Whereas the Licensee desires to evaluate the commercial utility and viability of the Inventions and to enter into a license agreement for and/or an assignment of the rights to the Inventions of Licensor as defined below, and

Whereas Licensee and Licensor have previously entered into a Mutual Confidentiality Agreement and an Option Agreement (refer to attached document),

IT IS THEREFORE AGREED:

1. Definitions:

(a) Inventions shall mean the following U.S. patent applications of Robert Lyden and any foreign patent applications or patents corresponding thereto:

    (1) Article of Footwear Having a Spring Element and Selectively Removable Components;

    (2) Customized Article of Footwear and Method of Conducting Retail and Internet Business; and

    (3) Future patent applications relating to the general subject matter of the above-noted patent applications referred to in 1(a)(1), 1(a)(2) which are capable of being filed during the term of this Agreement.

(b) Confidential Information shall have the meaning set forth in the Mutual Confidentiality Agreement executed between Licensor and Licensee in the summer of 2000, and said Agreement shall remain in full force and effect during the term of this Agreement and thereafter for the term set forth in the Mutual Confidentiality Agreement

2. Term

This Agreement shall have a Negotiation Period, which shall be effective from March 30, 2001 until June 30, 2001. The parties may extend the Negotiation Period an additional three months if mutually agreeable to Licensor and Licensee. Such extension shall not be unreasonably denied by either Licensor or Licensee.

3. Disclosure

During the effective period of this Agreement, and at times convenient to the Licensee, Licensor shall make a full disclosure of the Inventions to those employees, agents and contractors of Licensee and those of Licensee's parent, subsidiary and affiliated companies who shall be designated by the Licensee and its representatives ("Licensee's Representatives"). The Licensor shall further explain, upon request, in full the detailed structure and operations of the Inventions and relevant Business Practices, and shall answer to the best of his ability all questions asked by Licensee's Representatives which may advance his technical understanding of the Inventions. Licensor shall submit to the Licensee's Representatives all writings relating to the Inventions, and shall permit them to copy such writings. Licensor shall furnish upon request additional information and assistance reasonably necessary to enable Licensee's Representatives to understand and evaluate the novelty, utility and marketability of the Inventions. All reasonable expenses incurred by Licensor in furnishing the assistance and information required under this paragraph shall be paid for by Licensee.

2

C:\Documents and Settings\cwojcieszak.C.WOJCIESZAK2K\My Documents\Advanced Research\Molla-Launch System\Option-Lyden-C- extension to June 30.doc

4. Option

Licensor grants Licensee during the Negotiation Period of this Agreement (1) the right to use the Inventions to evaluate the commercial utility and viability of the Inventions and (2) an irrevocable option to acquire a worldwide license or assignment for the manufacture, use and sale of the Inventions (the "Option"). Licensee has previously provided written notice to Licensor of its intentions to exercise the option. Therefore, the parties shall negotiate in good faith through June 30, 2001 (the "Negotiation Period"), to reach a final licensing agreement for the Invention. During the Negotiation Period, Licensor shall not share the Inventions nor negotiate with any other person or entity regarding the Inventions.

5. Representations:

Licensor represents and warrants as follows:

(a) Licensor is the exclusive owner of all rights to the Invention and has the right to grant this option and the right to grant a license or assignment for the manufacture, use and sale of the Inventions, and further, has executed no agreement, present or past, with any third parties in conflict herewith and has not granted to any other person, firm or corporation any right, license, shop right or privilege.

(b) The Inventions, their improvements and writings relating thereto that are not disclosed in the patent applications are considered to be Confidential Information, and during the period of this option, Licensor shall not reveal the Inventions, the improvements thereto, nor the writings relating thereto, except as required by this Agreement or as permitted in writing by Licensee.

(c) During the Negotiating Period, Licensor shall not enter into negotiations with or grant to any other person, firm, or corporation any right, license, shop right or privilege in the Inventions, their improvements, or writings relating thereto.

(d) During the Negotiation Period, Licensor shall file, prosecute, and hold in his own name all applications and patents issuing from such applications relating to the Inventions and their improvements assigned to Licensee.

6. Duties of the Licensee during the option period.

During the period of this option, Licensee shall diligently investigate the nature and use of the Inventions including the marketability thereof, determine whether to exercise the option granted herein, receive and hold in confidence all Confidential Information and assistance required by this Agreement, and take all reasonable measures to prevent disclosures to others.

7. Duties of Licensee upon lapse of the option:

If the option granted by Paragraph 4 is not exercised, the duties of the Licensee shall be as follows:

(a) It shall promptly return all writings submitted by Licensor to Licensee's representatives, but it may retain copies of such writings without disclosing the same to any third party without written authorization of the Licensee.

(b) It shall instruct its employees to hold in confidence all Confidential Information received from Licensor until such information is available to the public generally or to its competitors.

(c) If Licensee does not enter into a license agreement, exclusive or nonexclusive, Licensee agrees to transfer to Licensor all rights, title and interest in the prototypes developed during the term of this Agreement [by Licensee]. Licensee's receipt of the prototypes developed during the terms of this agreement shall not create any agency relationship between Licensor and Licensee nor shall it create any license for any trademark, logo, insignia or design of Licensee unless authorized in writing by Licensee. Licensor shall not adopt or use

any mark, logo, insignia or design that is, or is likely to be, confusingly similar to or could cause deception or mistake with respect to any trademarks of Licensee.  Any unauthorized use of, manufacture, sale, advertising or distribution of the prototypes or any products corresponding thereto or developed from such prototypes by licensor or by any third party authorized by Licensor shall be the sole responsibility of Licensor including but not limited to any loss, liability, claims, suits, actions, proceedings, judgments, awards, damages and expenses (including attorneys' fees) that Licensor or such third party may cause to any other person or party, or due to infringement of any patents, trademarks or copyrights, and Licensee shall be held harmless for the same.  Licensor further acknowledges that the Licensee has no adequate remedy under this Agreement or at law in the event that the Licensee were to use the marks, logo, insignia or design of Licensee in a manner not authorized by this Agreement and the Licensee would, in such circumstances, be entitled to injunctive or other equitable relief, including interlocutory and preliminary injunctive relief.  Licensor also acknowledges that Licensee's rights and remedies under this Agreement and under law are intended to be cumulative, and not mutually exclusive.  At its own cost and expense, the Licensor shall defend, indemnify and hold the Licensee harmless (including the Licensee's subsidiaries, affiliates, stockholders, directors, officers, employees and agents) from and against any and all loss, liability, claims, suits actions, proceedings, judgments, awards, damages and expenses (including attorneys' fees) that they, or any of them may incur or suffer by reason of the Licensor's manufacture, use, sale, advertising or distribution of the prototypes or any products resulting therefrom.  The Licensee shall promptly notify the Licensor of any claim or notice of claim made which would be subject to this paragraph and the Licensee may, at its own expense seek counsel of its own choice to represent it or its affiliates and related third parties in such matter.  If the Licensor shall fail to promptly, professionally and diligently

5

defend the Licensee, the Licensee may, but shall have no obligation to, assume the conduct of the defense or settle the claim without the Licensor's consent and the Licensor shall thereupon be fully responsible for the costs and expenses for the defense and/or settlement, including, without limitation, counsel fees and expenses (including expert fees) and any judgments, settlements and awards incurred by Licensee.  Anything to the contrary notwithstanding, at its election, the Licensee shall have the sole control of all such proceedings and settlements, at the expense of the Licensor if (a) the same would, in the sole judgment of the Licensee, adversely affect the marks, logo, insignia or designs of Licensee, or (b) an adverse result would, in the sole judgment of the Licensee, irreparably damage the Licensee's goodwill, or (c) the Licensor shall fail to provide to the Licensee, upon request, with proof reasonably satisfactory to the Licensee, of the Licensor's financial responsibility or the responsibility of insurers for any judgment which may be entered or, absent such proof, with a satisfactory surety bond to assure such payment.  Use of the prototypes by Licensor shall exclude promotional activities, publication and related activities unless authorized in writing by Licensee.  Licensee further has the right to remove all logos, marks and insignia from such prototypes prior to transfer to Licensor.

   8. Duties of Licensor Upon Lapse of the Option:

   If the option granted by Paragraph 4 is not exercised, Licensor shall be under no obligation to Licensee except as provided for in Paragraph 9 below.

   9. Confidentiality

   Licensor and Licensee each hereby agree that the terms and conditions of this Agreement and the existence of this Agreement shall be strictly confidential for a period of five (5) years from the date of signing of this Agreement and will not be disclosed to any third parties without the mutual written consent of Licensor and Licensee.

10. Consideration

In consideration for this Agreement, Licensee shall pay to Licensor the total sum of US$25,000, the receipt of which shall be acknowledged in writing by Licensor. Licensee shall pay Licensor within thirty (30) days from the date of signing by the Licensor. This payment shall be credited towards payments due to Licensor under the license agreement or assignment to be acquired referred to in Paragraph 4, if and when such license or assignment becomes operative.

11. Liquidated Damages

The Licensor and Licensee mutually acknowledge that it would be difficult to ascertain the exact amount of damages incurred by the Licensee in the event of any breach or default of the warranties described in paragraph 5 and that, in addition to all of the remedies provided elsewhere in this Agreement or by law. Accordingly, Licensee shall be entitled to recover from Licensor, as liquidated damages, the sum of US$250,000 after written notification thereof by Licensee to Licensor, it being agreed that said sum represents a reasonable estimate of the damage that would accrue to the Licensee, reserving to the Licensee the right to recover such other and addition damages as may be proved by law.

12. Arbitration

(a) Any controversy or dispute arising out of or in connection with this Agreement, its interpretation, performance or termination, but excluding validity or enforceability of the Inventions, that the Licensor and Licensee are unable to resolve within ninety (90) days after written notice by one party to the other of the existence of such controversy or dispute, shall be submitted to arbitration. The dispute or controversy shall be finally settled by arbitration in accordance with the rules of The American Arbitration Association, as modified in this paragraph. Such arbitration shall take place in English and in

7

Baltimore, Maryland before a panel of three arbitrators, the first of which shall be selected by Licensee, the second being selected by the Licensor and the third of which shall be selected by the first and second arbitrators so selected. The arbitrators shall apply the laws of the state of Maryland and shall render a written decision with reasons therefore within three (3) months from the date that this matter is submitted to arbitration.

(b) The institution of any arbitration hereunder shall (1) relieve Licensee of its obligation to make payments to Licensor required by the terms of this Agreement during the continuance of the arbitration proceeding and (2) prevent Licensor from applying for and obtaining from a court a temporary restraining order and/or preliminary injunctive relief pending the outcome of the arbitration.

(c) The decision of the arbitrator shall be binding and conclusive on the parties and they shall comply with such decision in good faith. Each party hereto hereby submits itself to the jurisdiction of the court of the State of Maryland, but only for entry of judgement with respect to the decision of the arbitrators hereunder, including injunctive relief if appropriate to render effective the arbitrators' decision. Notwithstanding the foregoing, judgement on the award by the arbitrators may be entered into any court of the State of Maryland or any court having jurisdiction. If traditional enforcement or review of the arbitrators' decision is sought, the prevailing party shall be entitled to its costs and reasonable attorneys' fees up to a maximum of US$200,000 in addition to any amount of recovery ordered by the court.

13. The parties acknowledge and agree any services to be performed under this Agreement shall occur solely within the United States of America.

8

C:\Documents and Settings\cwojcieszak.CWOICIESZAK2K\My Documents\Advanced Research\Molla-Launch System\Option-Lyden-C- extension to June 30.doc

14. Licensor understands and agrees that in order for Licensee to make payments to Licensor, Licensor shall be responsible for providing to Licensee invoices and any required declaration(s) that Licensor is subject to taxation under the laws of the United Sates of America.

15. Any notice to be given pursuant to the terms of this Agreement shall be in writing and shall be hand-delivered, mailed by first class US mail or sent via facsimile at the addresses below.

> Robert M. Lyden
> 18261 S.W. Fallatin Loop
> Aloha, Oregon 97007
> Fax # (503) 649-4853
>
> Craig Wojcieszak
> FILA USA, Inc.
> 83 Pine Street
> Peabody, MA 01960
> Fax # (978) 536-5397
>
> Copy to:
>
> Franco Maula
> FILA SPORT S.p.A.
> Legal Department
> Viale Cesare Battisti 26
> 13900 Biella, Italy
> Fax # 011 390153506297

IN WITNESS WHEREOF the parties have signed this Agreement.

_Robert M. Lyden_    April 4, 2001
Robert M. Lyden        Date            FILA SPORT S.p.A.
18261 S.W. Fallatin Loop
Aloha, OR 97007

_Enzo Zanchetta_    02/04/2001
Enzo Zanchetta        Date

10