**EXHIBIT LL**

**PROBLEMATIC NIKE. INC.  PATENTS**

**Patent on Aerodynamic Apparel**

U.S. 6,438,755 by MacDonald et al., for "Aerodynamic Garment For Improved Athletic Performance And Method of Manufacture," patent application 09/663,117 filed September 15, 2000, granted August 27, 2002.

In brief, the would-be inventorship is believed to be incorrect.  Further, the invention was publicly disclosed by Lyden back in 1989.  In addition, Nike, Inc. violated their duty of disclosure with the USPTO because Lyden's invention disclosure entitled "Aerodynamic Apparel: Background for U.S. Patent Application, and/or Trademark Protection" dated August 31, 1989, and also Leonard W. Brownlie's Ph. D. thesis published in 1992 were not cited during the prosecution.  Moreover, Lyden had also granted to Nike, Inc. a non-exclusive license on such aerodynamic apparel in 1997.

**Patents Regarding Nike, Inc. FREE Running Shoe**

U.S. 6,990,755, by Hatfield et al., for Article Of Footwear With A Stretchable Upper And An Articulated Sole Structure," 10/681,321 filed October 9, 2003, granted January 31, 2006.

U.S. 7,171,767, by Hatfield et al., for Article Of Footwear With A Stretchable Upper And An Articulated Sole Structure," 11/269,361 filed November 7, 2005, granted February 6, 2007.

U.S. 7,392,605, by Hatfield et al., for "Article Of Footwear With A Stretchable Upper And An Articulated Sole Structure," 11/641,484 filed December 18, 2006, granted July 1, 2008.

The three patents above are believed to be problematic for the following reasons: The inventorship is not correct because Lyden had invented and advocated such articulating sole structures while a regular employee and consultant to Nike, Inc. between May, 1990 and September, 1998.  Further, Nike, Inc. violated its duty of disclosure with the USPTO and did not cite the most relevant prior art owned by Nike, Inc. during the prosecution of these cases, namely, U.S. 4,562,651 by Frederick et al. for "Sole With V-Orientated Flex Grooves," and in particular, U.S. 5,384,973 by Lyden for "Sole With Articulated Forefoot," and also three patents by Lyden et al., for "Athletic Shoe With Rearfoot Strike Zone," U.S. 5,425,184, U.S. 5,625,964, and U.S. 6,055,746.

**CONFLICTING NIKE, INC. PATENTS**

With reference to the Nike, Inc. patents recited below, Lyden had filed and disclosed his issued and pending patent applications to Nike, Inc. in 2002, but Nike, Inc. then included structures found in Lyden's patent applications, and the like, in its own later filed patent applications, and in many cases the relevant prior Lyden patent(s) were not provided to the patent examiners.

**Patents For Removable Soles**

**By Grove et al.**

U.S. 6,915,596 by Grove et al. for "Footwear With Separable Upper And Sole Structure," 10/349,398 filed January 21, 2003, granted July 12, 2005.

The relevant Lyden patents were provided to the patent examiner after Lyden's discussion with Nike, Inc. in-house patent counsel James A. Niegowski, but the patent examiner's attention was not then directed to the relevant figures which had been brought to the attention of Nike, Inc.

U.S. 7,076,890 by Grove et al. for "Footwear With Separable Upper And Sole Structure," 11/134,112 filed May 19, 2005, granted July 18, 2006.

The relevant Lyden patents were provided to the patent examiner after Lyden's discussion with Nike, Inc. in-house patent counsel James A. Niegowski,

but the patent examiner's attention was not then directed to the relevant figures which had been brought to the attention of Nike, Inc.

U.S. 7,444,763 by Grove et al. for "Footwear With Separable Upper And Sole Structure," 11/443,617 filed May 30, 2006, granted November 4, 2008.

Lyden filed three protests in the USPTO against this pending application, but Nike, Inc. failed to make all of them of record during the prosecution. In brief, the key structures for which Nike, Inc. obtained protection were already present in Lyden's earlier filed patents which were disclosed to Nike, Inc. in 2002. See more detail in Lyden's three protests in the USPTO filed against Grove et al.'s patent application 11/443,617 dated November 15, 2007, January 9, 2008, and June 6, 2008, Exhibits S, T, and U, and also Exhibit Q.

**By McDonald et al.**

U.S. 7,451,557 by McDonald et al., for "Article Of Footwear With A Removable Midsole Element," 10/862,056 filed June 4, 2004, granted November 18, 2008.

The relevant Lyden patents were provided to the patent examiner, but the patent examiner's attention was not then directed to the relevant figures which had been brought to the attention of Nike, Inc.

4

U.S. 7,290,357, by McDonald et al., for "Article Of Footwear With An Articulated Sole Structure," 11/098,022 filed April 5, 2005, granted November 6, 2007.

Again, the relevant Lyden patents were provided to the patent examiner, but the patent examiner's attention was not then directed to the relevant figures which had been brought to the attention of Nike, Inc.

U.S. 7,607,241, by McDonald et al., for "Article Of Footwear With An Articulated Sole Structure," 11/869,604 filed October 9, 2007, granted October 27, 2009.

In brief, many of the key structures for which Nike, Inc. obtained patent protection in the three above patents by McDonald et al. were already present in Lyden's earlier filed patents which had been disclosed and were known to Nike, Inc.  Further, Nike, Inc. did not specifically bring the most relevant drawing figures in the Lyden patent applications which had been pointed out to Nike, Inc.'s in-house patent counsel to the patent examiners.

U.S. 7,107,235 by Lyden shows an article of footwear including a removable and replaceable portion of a sole which extends substantially full length, e.g., see drawing figures 254, 255, 258, 259, 260, 283, and 284.  The removable portion of a sole can be a simple friction or registered fit with the openings in the upper, or the removable sole can include undercuts 154 for

5

mechanically engaging the upper in a snap fit manner as shown, e.g., in drawing figures 491, 492, and discussed at column 183, and also shown in figures 553, and 555.  As shown in drawing figure 489, the removable sole portion can be made of a single material and this is discussed in column 183.  As shown in drawing figures, 352, 353, 354, and also 392 and 393, the removable sole can include traction members which extend not only downwards, but also laterally or sideways from a side portion of the removable sole through openings or apertures which are not only on the bottom, but also about the sides of the upper.

As shown in U.S. 7,107,235 by Lyden, e.g. see drawing figures 351, 354, 554, 555, 574 and 575 the upper can include a plastic material 138 on the bottom, but also about a portion of all of its sides and so form a so-called "rim" as shown and claimed in U.S. 7,451,557 by McDonald and Long.  Further, as shown in drawing figures 554 and 555 of U.S. 7,107,235 by Lyden, the plastic material can serve as a wear resistant ground engaging portion of the sole 32 and the article of footwear can also include a permanent sole portion including a traction member 115.  Accordingly, the key structures disclosed in McDonald et al. for combining an upper including a permanent sole with a removable sole footwear component were not novel when the McDonald et al. patent was filed over two years after Lyden's disclosures to Nike, Inc., and also over a year after their publication.

**By Newson et al.**

U.S. 7,140,129 by Newson et al., for "Article Of Footwear With Perforated Covering And Removable Components," 10/787,888 filed February 27, 2004, granted November 28, 2006.

The Newson et al. patent is generally similar to U.S. 7,451,557 by Steve McDonald et al., and U.S. 6,915,596, U.S. 7,076,890, and U.S. 7,444,763 by Grove et al. in which a portion of the sole can be placed inside the upper and ground engaging portions of the sole can project through openings which are provided in the bottom side of the upper. Lyden filed for this subject matter in 2001 and had previously disclosed his patent applications to Nike, Inc. in 2002. Nike, Inc. then filed for like subject matter over two years later. Moreover, Lyden's relevant patents were not made of record during the prosecution of U.S. 7,140,129.

## Patents For Insoles

**By Lafortune**

U.S. 7,600,332, by Mario Lafortune, for "Article Of Footwear With A Removable Foot-Supporting Insert," 11/354,570 filed February 13, 2006, granted October 13, 2009.

Lyden's relevant patents were not provided by Nike, Inc. to the USPTO.

U.S. 7,900,379, by Lafortune, for "Article Of Footwear With A Removable Foot-Supporting Insert," 12/561,300 filed September 17, 2009, granted March 8, 2011.

Lyden's relevant patents were not provided by Nike, Inc. to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden which includes dozens of drawing figures showing insoles having at least one indentation on the bottom side for mating with a protrusion, e.g., see drawing figures 4, 38, 449, 467, 469, 470, 473, and 482, and also see also drawing figures 331, 333, 334, 361, 362 regarding mating parts relating to means for cushioning in the rearfoot area of an article of footwear.

**By Greene**

U.S. 6,684,532 by Greene et al. for "Footwear With Removable Foot-Supporting Member," 09/990,100 filed November 21, 2001, granted February 3, 2004.

Lyden's relevant patents were not provided by Nike, Inc. to the patent examiner.

U.S. 7,013,583 by Greene et al. for "Footwear With Removable Foot-Supporting Member," 10/734,114 filed December 15, 2003, March 21, 2006.

Lyden's relevant patents were not provided by Nike, Inc. to the patent examiner. Some of the drawing figures in the prior art Lyden patents or patent applications show insoles having different relative thickness in the forefoot and rearfoot regions, e.g., see U.S. 6,449,878 by Lyden, drawing figure 28.

**Patents for Shoes Having Spring Elements**

**By Aveni**

U.S. 7,100,308 by Michael Aveni, for "Footwear With A Heel Plate Assembly," 10/719,668 filed November 21, 2003, granted September 5, 2006.

In brief, Nike, Inc. violated its duty of disclosure by not being candid with the patent examiner. Some Lyden patents were cited during the prosecution, but they were then misrepresented by Nike, Inc. and the most relevant drawing figures were not brought to the patent examiner's attention. A detailed discussion of the facts with cross-reference to relevant Lyden drawing figures is provided in Exhibit Q. In 2002, Aveni had been a contact person regarding Lyden's disclosures to Nike, Inc.

**By Clarke**

U.S. 6,925,732 by Richard Clarke, for "Footwear With Separated Upper And Sole Structure," 10/464,868 filed June 19, 2003, granted August 9, 2005.

In brief, Nike, Inc. only disclosed Lyden's U.S. 6,449,878, and the most relevant Lyden patents were not cited. However, see, e.g., U.S. 7,107,235 by Lyden drawing figures 23, 70, 195, 331, 333, 334, 361, 362, and 449. In brief, Nike, Inc. did not provide Lyden's most relevant prior art information during the prosecution to the patent examiner Marie Patterson.

**By Smith et al.**

U.S. 7,100,309, by Smith et al., for "Track Shoe With Heel Plate And Support Columns," 10/758,959 filed January 16, 2004, granted September 5, 2006.

In brief, several Lyden patents were recited during the prosecution, but the examiner's attention was not directed to the most relevant figures therein. In U.S. 7,107,235 by Lyden, in drawing figures 78-81, Lyden disclosed two or more columns on the medial side and lateral side, whereas Smith et al. disclosed one column on the medial side and one on the lateral side. Lyden also disclosed track spikes and removable traction elements in Figures 23 and 38. Accordingly, at least one of the independent claims of U.S. 7,100,309 is believed to be too broadly defined.

U.S. 7,997,011, by Smith et al., for "Footwear With Support Assembly Having Spring Arms," 11/538,164 filed October 3, 2006, granted August 16, 2011.

Lyden's relevant patents were not provided by Nike, Inc. to the patent examiner handling the case. However, see, e.g., U.S. 7,107,235 by Lyden, drawing figures 109-110.

**By Caine et al.**

U.S. 7,866,063, by Caine et al., for "Article of Footwear With Shock Absorbing Heel System," 11/763,415 filed June 14, 2007, granted January 11, 2011.

In brief, this patent is related to similar subject matter and had incorporated by reference U.S. 7,100,309 (above), but the relevant Lyden patents were not provided by Nike, Inc. to the patent examiner.

## Patents for Stabilizers

**By Baudouin**

U.S. 8,001,704, by Baudouin, for "Footwear With A Foot Stabilizer," 11/869,511 filed October 9, 2007, granted August 23, 2011.

Nike, Inc. violated its duty of disclosure because the relevant Lyden patents were not provided to the patent examiner, e.g., see the stabilizers and other structures shown in drawing figures 353, 356, 357, 430, and 559 of U.S. 7,107,235 by Lyden.

## Patents For Shoes Having Knitted Uppers

**By Dua or Dua et al.**

U.S. 6,931,762 by Bhupesh Dua for "Footwear With Knit Upper And Method Of Manufacturing The Footwear," 10/323,608 filed December 18, 2002, granted August 23, 2005.

11

Lyden's relevant patent applications which had been provided to Nike, Inc. were not disclosed to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 570-575 and related discussion in columns 199-201.

U.S. 6,910,288 by Dua for "Footwear Incorporating A Textile With Fusable Filaments And Fibers," 10/323,609 filed December 18, 2002, granted June 28, 2005.

Nike, Inc. did not disclose Lyden's prior patent applications to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 570-575 and related discussion in columns 199-201.

U.S. 6,986,269, by Dua for "Footwear With Knit Upper And Method Of Manufacturing The Footwear," 11/024,480 filed December 30, 2004, granted January 17, 2006.

Nike, Inc. did not disclose Lyden's prior patent applications to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 570-575 and related discussion in columns 199-201.

U.S. 7,131,296, by Dua et al. for "Footwear With Knit Upper And Method Of Manufacturing The Footwear," 11/334,731 filed January 17, 2006, granted November 7, 2006.

Nike, Inc. did not disclose Lyden's prior patent applications to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 570-575 and related discussion in columns 199-201.

U.S. 7,347,011, by Dua et al. for "Article Of Footwear Having A Textile Upper," 10/791,289 filed March 3, 2004, granted March 25, 2008.

Nike, Inc. did not disclose Lyden's prior patent applications to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 358-360 and related discussion in columns 163-164 relating to shoe upper patterns, and also drawing figures 570-575 and discussion in columns 199-201 relating to knitted uppers.

U.S. 7,774,956, by Dua et al., for "Article Of Footwear Having A Flat Knit Upper Construction or Other Upper Construction," 11/558,499 filed November 10, 2006, granted August 17, 2010.

Nike, Inc. did not disclose Lyden's prior patent applications to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 283-284, 356-

357, 426-430, 458-462 relating to straps and side supports integrated with shoe laces, and also drawing figures 570-575 and discussion in columns 199-201 relating to knitted uppers.

U.S. 7,814,598, by Dua et al., for "Article Of Footwear Having a Textile Upper," 12/032,995 filed February 18, 2008, granted October 19, 2010. Divisional of U.S. 7,347,011.

In brief, the relevant Lyden patents were provided by Nike, Inc. to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 358-360 and related discussion in columns 163-164 relating to shoe upper patterns, and also drawing figures 570-575 and discussion in columns 199-201 relating to knitted uppers.

U.S. 8,042,288, by Dua et al., for "Article Of Footwear Having A Textile Upper," 12/879,517 filed September 10, 2010 granted on October 25, 2011.

In brief, the relevant Lyden patents were provided by Nike, Inc. to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 358-360 and related discussion in columns 163-164 relating to shoe upper patterns, and also drawing figures 570-575 and discussion in columns 199-201 relating to knitted uppers.

U.S. 8,196,317, by Dua et al., for "Article Of Footwear Having A Flat Knit Upper Construction Or Other Upper Construction," 12/829,880 filed July 2, 2010, granted June 12, 2012.

In brief, the relevant Lyden patents were provided by Nike, Inc. to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 283-284, 356-357, 426-430, 458-462 relating to straps and side supports integrated with shoe laces, and also drawing figures 570-575 and discussion in columns 199-201 relating to knitted uppers.

U.S. 8,215,132, by Dua et al., for "Article Of Footwear Having A Flat Knit Upper Construction Or Other Upper Construction," 12/829,788 filed July 2, 2010, granted on July 10, 2012.

In brief, the relevant Lyden patents were provided by Nike, Inc. to the patent examiner, but see, e.g., U.S. 7,107,235 by Lyden, drawing figures 283-284, 356-357, 426-430, 458-462 relating to straps and side supports integrated with shoe laces, and also drawing figures 570-575 and discussion in columns 199-201 relating to knitted uppers.