## ATTENTION: GROUP NUMBER 3728

### THIRD PROTEST UNDER 37 CFR 1.291(c)(5)
### Against Pending U.S. Patent Application Serial No. 11/443,617

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:

| | |
|---|---|
| **APPLICANT:** Grove, et al. | **Group Number:** 3728 |
| **SERIAL NUMBER:** 11/443,617 | **Examiner:** Patterson, Marie D. |
| **FILING DATE:** May 30, 2006 | **Status:** Pending |
| **TITLE:** Footwear with Separable Upper and Sole Structure | |

### THIRD PROTEST UNDER 37 CFR 1.291(c)(5)
### Against Pending U.S. Patent Application Serial No. 11/443,617

Director of Group Number 3728
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### CERTIFICATION UNDER 37 C.F.R. 1.10

I hereby certify that, on the date shown below this correspondence is being mailed as "Express Mail Post Office to Addressee" Mailing Label No. EB 989911098 US.

Date: June 6, 2008

Signature _Robert M. Lyden_
Robert M. Lyden

### EXPLANATION FOR THIRD PROTEST

The issues raised in this third protest are significantly different than those raised earlier because they relate to a possible error in the Examiner's recent Notice of Allowance mailed May 23, 2008, and also to teachings contained within U.S. 7,107,235 which have not been specifically directed to the Examiner's attention that render the claims of U.S. patent application serial number 11/413,667 unpatentable.

For the Examiner's convenience, relevant drawing figures and passages contained in U.S. 7,107,235 which render the claims of U.S. patent application serial number 11/413,667 unpatentable have been indicated and copied below.

A personal check in the sum of $130.00 for payment of the third protest processing fee under 37 CFR 1.17(i) is attached hereto.

As of today, June 6, 2008, the public PAIR system indicates that the protested U.S. patent application serial number 11/ 413,667 has been allowed by Examiner Marie D. Patterson in Group Art Unit 3728, but the application has not yet issued. In accordance with MPEP 1308, the Director and Examiner may then take steps to withdraw allowance of the case and re-open the prosecution.

## IDENTIFICATION OF APPLICATION

This is the third protest by the party in interest under 37 CFR 1.291(c)(5) against the above identified pending U.S. patent application serial number 11/443,617 for "Footwear with Separable Upper and Sole Structure" by Grove, et al., which is assigned to Nike, Inc., filed May 30, 2006, and published as US 2006/0213088 A1 on September 28, 2006. The protested case is assigned to Examiner Marie D. Patterson in Group Art Unit 3728.

## SERVICE OF PAPERS

Service of a complete copy of these papers was made by depositing a copy of these papers with the United States Postal service on June 6, 2008 in an envelope that was mailed with sufficient postage as "Express Mail Post Office to Addressee," Mailing Label No. _EB 9899 11075_, and addressed to the applicant's last named attorney of record, namely, William F. Rauchholz of Banner & Witcoff, Ltd., 1100 13th Street, N.W., Suite 1200, Washington, D.C. 20005-4051, phone: (202) 824-3000, and another complete copy of these papers was also sent to James A. Niegowski, an in-house patent attorney for Nike, Inc., by depositing another copy with the United States Postal service on June 6, 2008

with sufficient postage as first class mail in an envelope that was addressed to James A. Niegowski, Nike, Inc., One Bowerman Drive, Beaverton, OR 97005, phone: (503) 671-6453. Attached as evidence of service is a copy of "Express Mail Post Office to Addressee" Mailing Label No. _EB 9899 11075_ .

## LISTING OF INFORMATION RELIED ON

Listed on the attached Form PTO-1449 are the patents, publications or other information relied upon.

## COPIES OF LISTED ITEMS

A complete copy of U.S. 7,107,235 has been provided to the Examiner as a courtesy for the purpose of facilitating review of this matter.

## RELEVANCE OF LISTED ITEMS

Pending U.S. patent application serial number 11/443,617 as to which this protest is filed and which is presently before the Examiner is a continuation of U.S. patent application serial number 11/134,112, filed May 19, 2005, now U.S. 7,076,890, which in turn is a continuation of U.S. patent application serial number 10/349,398, filed January 21, 2003, now U.S. 6,915,596.

The key patentable matter in the protested patent application serial number 11/443,617 relates to a particular mating "locking system" structure as between the upper and sole for removably securing the two parts together. For example, as defined in Claim 1 of U.S. patent application serial number 11/443,617, a shoe "upper" can be provided for a wearer, and one of two alternative "sole structures" can be selected for use with the "upper." When being secured, the selected "sole structure" is positioned within the "upper" and the "protrusions" of the "sole structure" extend through "apertures" in the "upper," "wherein the securing further includes engaging a locking system by extending edges of the apertures into indentations in the protrusions." In brief, the "sole

4

structure" includes several traction elements which include an undercut portion or "indentations" that can become mechanically engaged by the upper when the sole structure footwear component is inserted in the upper and portions of the sole structure are pushed through the apertures in the upper and into working position.

Figures 491 and 492 of U.S. 7,107,235 show and teach this structure and method of assembling an article of footwear for a wearer. In particular, the "undercut(s) 154" or indentations present in the protruding "traction member(s) 115" of the "sole 43" are shown in Figure 492 below.



FIG. 491



FIG. 492

**U.S. 7,107,235, Column 183, Lines 34-47:**

FIG. 491 is a longitudinal cross-sectional view of an article of footwear 22 including an anterior outsole element 44 having traction members 115 including an undercut 154 portion. **The individual traction members 115 can include an undercut 154 portion about their perimeter that matches the size of the corresponding registered openings 72 which are present in the upper 23. Accordingly, the traction members 115 can overlap and effectively seal the openings 72, and the anterior outsole element 44 can be snap-fitted and mechanically locked in place when the traction members 115 of the anterior outsole element 44 are properly inserted through the upper 23.**

FIG. 492 is an exploded longitudinal cross-sectional side view of the article of footwear 22 shown in FIG 491.

Further, U.S. 7.107,235 also teaches a footwear upper having openings or "apertures" and a removable sole which can extend full length relative to a footwear upper, as shown in Figures 254-255 (provided below), and also Figures 258-260. Accordingly, the structure and also the method of assembling and customizing an article of footwear recited in the claims of U.S. patent application serial number 11/443,617 are anticipated by U.S. 7,107,235.



FIG. 254

FIG. 255

So that the Examiner will have no doubt or difficulty in finding the relevant passages in the specification of U.S. 7,107,235 which teach the method of assembling and customizing an article of footwear with the use of alternative sole structures and uppers, and render U.S. patent application serial number 11/443,617 unpatentable, several relevant passages from U.S. 7,107,235 will be indicated and provided below.

<u>U.S. 7,107,235</u>

**Column 3, Lines 31-39:**

> **In addition, the ability to easily remove, renew, and recycle the outsole portions of the preferred article of footwear** can render the use of softer materials having enhanced shock and vibration dampening characteristics, but perhaps diminished wear properties, viable from a practical standpoint. **Moreover, the outsole portion of the preferred article of footwear can be selected from a variety of options with regards to configuration, materials, and function.**

**Column 12, Lines 28 through Column 13, line 19:**

> **The sole can consist of a single component,** or alternately can consist of a two part component including an anterior outsole element and a posterior outsole element, or alternately can consist of a three part component including an anterior outsole element, a middle outsole element, and a posterior outsole element. The anterior outsole element can be affixed in functional relation to the superior spring element, or anterior spring element. **The anterior outsole element can include an undercut portion for mating with openings in the upper, thus providing a snap fit with the upper.** The posterior outsole element and the middle outsole element can be affixed to the inferior spring element, and thereby be

affixed in functional relation to the superior spring element. The sole can include a midsole and an outsole, or merely an outsole. The sole can also include an outsole having a backing, a tread or ground engaging surface, traction members, a rocker configuration, and lines of flexion, whether in partial or complete combination. The sole can include a bicycle cleat, or traction members suitable for use on natural or artificial turf. The anterior outsole element can have a generally planar configuration, or alternately, a three dimensional wrap configuration. The anterior outsole element can be made in different length sizes, width sizes, and last or foot shapes, as desired. The backing portion of the anterior outsole element can include an elevated profile and thereby substantially define the shape of the upper in the forefoot area. Further, the backing portion of the anterior outsole element can be molded and cut to a desired length, width, girth and footshape, as desired. The backing portion of an anterior spring element can be substantially positioned in the forefoot area, or alternately, can substantially extend full length. A gasket can be used to seal the junction between the anterior outsole element and the upper. The sole can further include a cushioning element such as a fluid-filled bladder, or a foam material. A cushioning element can be affixed in functional relation to the backing portion of an outsole element. Alternately, a cushioning element can include a web portion, backing portion, or flange, and the cushioning element can be inserted into a pocket in the outsole element and a substantial portion of the cushioning element can project through a opening in the backing portion of the outsole element. Accordingly, the cushioning element can be affixed in position, but the cushioning element can nevertheless be selectively removable and replaceable. A middle outsole element can be made of at least one fluid-filled bladder, or alternately be made of a resilient foam material. In a bottom plan view, a middle outsole element can have a generally triangular shape. A cushioning element can be positioned on

the medial side in order to create a differential cushioning and stability effect. In an alternate embodiment, the sole can be affixed in functional relation to the exterior of the upper. The anterior outsole element can include male mating structures for mating with female mating structures on the superior spring element. **Again, the sole can be selectively removable and replaceable, and can be made with a multiplicity of alternate configurations and materials which are particularly suitable for use given specific environmental conditions and performance tasks.**

**Column 169, Lines 52 through Column 170, Lines 14:**

**Moreover, the configuration and material composition of a posterior outsole element 46, middle outsole element 45, and anterior outsole element 44 can be selected from a variety of options which can be provided for optimizing performance in a specific activity, task, or in particular environmental conditions.** For example, the outsole elements can be specifically designed and engineered for use in running on roads, trails, racing, walking, or cross-training. An outsole element for trail running can include a greater number of traction members having greater height relative to one best suited for running on roads, whereas it can be advantageous for an outsole element intended for use in racing to be especially light-weight. Further, an outsole element intended for use on an artificial track surface can include a plurality of relatively small protrusions or spikes. Outsole elements which are made of non-marking materials can be provided that are especially suitable for use in basketball, whereas outsole elements including natural rubber, and the like, can be provided that are especially suitable for use in volleyball. Material compounds which are especially resistant to wear can be provided for use in tennis. Outsole elements including a plurality of cleats, protrusions, or traction elements can be specifically designed and engineered

for use in baseball, football, golf, and soccer, respectively. As shown in Figure 394, an outsole element can accommodate the use of a bicycle cleat system. Outsole elements made of material compositions which are resistant to oil and other chemicals can be provided that are especially suitable for use in articles of footwear intended for work and industrial use.

**Column 182, Line 66 continued through Column 183, Line 23:**

The thickness and stiffness of the anterior spring element 48, posterior spring element 49, and inferior spring element 50 can be selected from a variety and range of options in order to provide optimal performance depending upon whether an individual is walking, running, or possibly carrying a heavy pack. Further, the ground engaging portion 53 of the anterior outsole element 44 and also the posterior outsole element 46 can be selected from a variety and range of options with respect to their specific physical and mechanical properties and material composition. For example, a relatively soft material providing superior cushioning characteristic could be selected for use when drilling or running on asphalt, whereas a material having a wettability index of equal to or greater than 90 degrees, that is, hydrophobic properties could be selected for use in muddy conditions. Further, a material that is hydrophilic and porous could be suitable for use in snow or slippery conditions. **In brief, the configuration of the traction elements 115 and their material composition can be selected for the specific anticipated or required task, terrain, and weather conditions. In less than one minute, the article of footwear 22 can be completely disassembled and re-assembled and any selected components then be replaced. Accordingly, the present invention can provide versatility and superior performance to members of the armed forces.**

As concerns providing a plurality of sole structures for possible selection and use in assembling or customizing an article of footwear, the Examiner's attention is also directed to U.S. 7,107,235, Columns 201 and 203:

**U.S. 7,107,235, Column 201, Lines 50-53 :**

Component Selection Guide for Making An Article
of Footwear And Method of Conducting Retail and
Internet Business

**U.S. 7,107,235, Column 203, the middle portion is reproduced below:**

<u>Anterior Outsole Element 44</u>

- Size Length
- Size Width
- Style
    - Footshape
- Type
    - Single Anterior Spring Element
        - Standard Forefoot Outsole
        - 3D Wrap Forefoot Outsole
        - Gasket
        - Flex Notch Pattern
            - MPJ Flex
            - Other
            - None (Cycling / Skating)
    - Double Anterior Spring Element
        - Neutral
        - Pronator
        - Supinator
        - Window for Foam Columns
        - Window for Fluid-Filled Bladder
        - Flex Notch Pattern
            - MPJ Flex
            - Other
            - None (Cycling / Skating)

The Examiner's attention is also directed to the claims of U.S. 7,107,235. For example, Claim 1 contains language which makes it clear that the custom article of footwear is assembled using a plurality of footwear components, and

13

that a plurality of variations of a plurality of the footwear components are provided for selection. The provided footwear components comprise at least an upper, a sole, and cushioning means. Moreover, regarding independent Claim 1, the step of collecting data is further defined in dependent Claims 59-59; the step of creating information and intelligence is further defined in dependent Claim 60; the step of providing a plurality of footwear components is further defined in dependent Claim 61; the step of selecting is further defined in dependent Claim 62; and, the step of causing the custom article of footwear to be delivered to a designated address is further defined in dependent Claim 63. In this regard, the assembled customized shoe can simply be handed to a customer in a retail store, and dependent Claim 52 specifically recites that all the steps can be completed in a retail store. Further, dependent Claim 8 recites that the footwear components are removable and replaceable. The Examiner is encouraged to review the claims of U.S. 7,107,235. Claim 1 is provided for the Examiner's convenience below:

**U.S. 7,107,235, Claim 1:**

A method of conducting business including making and selling a custom article of footwear comprising the steps of:
collecting data relating to an individual;
creating from said collected data information and intelligence for making said custom article of footwear for said individual;
**providing a plurality of footwear components, and a plurality of variations of a plurality of said footwear components**, a plurality of said footwear components including fastening means;
selecting from the plurality of footwear components sufficient footwear components for making said custom article of footwear having an anterior side, a posterior side, a medial side, a lateral side, and comprising at least **an upper, a sole,**

14

and cushioning means affixable together in functional relation by said fastening means;

providing said information and intelligence and said sufficient footwear components to a physical location at which said custom article of footwear can be made;

securing a plurality of said sufficient footwear components in functional relation with said fastening means and completing the assembly for making said custom article of footwear; and,

Causing said custom article of footwear to be delivered to a designated address.

Accordingly, as taught in U.S. 7,107,235, at least two alternative sole options and upper options can be made available to a wearer for selection and assembly of the custom article of footwear. Further, the "undercut 154" on the "traction members 115" for mating with the "upper 23" shown in Figures 491-492 of U.S. 7,107,235 is specifically claimed in dependent Claims 46 and 47, as shown below.

**U.S. 7,107,235, Claim 46:**

The method of conducting business including making and selling a custom article of footwear according to claim 1, said upper having a superior side and an inferior side, said sole comprising an outsole including a plurality of traction members, **said upper further comprising a plurality of openings on said inferior side, whereby at least a portion of said outsole is removably affixed in functional relations to said upper and said plurality of traction members substantially project through said plurality of openings on said inferior side of said upper**.

**U.S. 7,107,235, Claim 47:**

The method of conducting business including making and selling a custom article of footwear according to claim 46, **said plurality of traction members each comprising an**

15

**undercut, whereby said outsole can be mechanically secured in functional relation to said upper.**

In brief, U.S. patent application serial number 11/443,617 is anticipated by U.S. 7,107,235 because the claimed structure and method of assembling and customizing an article of footwear is shown in the drawing figures, disclosed in the specification, and also claimed in U.S. 7,107,235. Further, the relevant disclosure in U.S. 7,107,235 being discussed in this protest is also present in U.S. 7,016,867.

Claim 1 of U.S. patent application serial number 11/443,617 recites that at least two different alternative sole structures are provided for possible selection and use with an upper when assembling the article of footwear. As discussed above, this claim does not define patentable matter over U.S. 7,107,235.

Further, Claim 9 of U.S. patent application serial number 11/443,617 recites that at least two different alternative uppers are provided for possible selection and use with a sole structure when assembling the article of footwear. However, this is not novel either because U.S. 7,107,235 shows various alternative uppers for use in the drawing figures, discusses providing different uppers for possible selection and use in the specification, and also claims the same. So the Examiner can have no doubt or difficulty in finding some of the relevant passages in the specification of U.S. 7,107,235 which anticipate the method of assembling or customizing an article of footwear being claimed in pending U.S. patent application serial number 11/443,617, and in particular, regarding the provision of alternative footwear uppers, the following relevant passages of U.S. 7,107,235 have been provided below.

16

**U.S. 7,107,235, Column 85, Lines 9-18:**

> Further, it can also be readily understood that within certain practical limitations, **different uppers 23 having different configurations** possibly including different lengths, widths, and foot shapes can be used with a given lasting board 79 in order to customize the fit of an article of footwear 22 for a unique individual or target population. **For example, a plurality of uppers 23 can be developed for use with different target populations consisting of individuals having generally similar anatomical characteristics and foot dimensions.**

**U.S. 7,107,235, Column 91, Line 64 through Column 92, Line 16:**

> **For example, selections can be made from a ready stock of different uppers 23, lasting boards 79, spring elements 51 and related sub-component parts, insoles 31, and sole 32 components possibly including midsoles 26, and outsoles 43, having different configurations and dimensions corresponding to a selected article of footwear 22, and the resulting custom article of footwear 22 can be rapidly made or assembled, as desired.** If desired, a substantial portion of an article of footwear 22, that is, greater than fifty percent, and preferably greater than seventy-five percent, and most preferably substantially all of the other major components of the article of footwear can be removably assembled and secured in functional relation to the upper 23 to make a custom article of footwear 22 within minutes. Again, this task can be performed by the consumer, or a service provider at the point of purchase in a retail setting or medical facility. Accordingly, similar to the rapid delivery eyewear retail stores and service centers that presently exist, a consumer can now also be provided with a custom article of footwear within minutes.

Claim 35 of U.S. patent application serial number 11/443,617 is similar to Claim 1, but also recites a "detachable fastener." However, this is not novel because U.S. 7,107,235 shows in the drawing figures, teaches in the specification, and claims the same. In this regard, the Examiner's attention is again directed to Figures 491 and 492, and in particular to the detachable "fastener 29," and also to dependent Claims 6-8, and 64. Moreover, it can be readily understood from the previous discussion that independent Claims 43, 51, 59, 66, and 72 of U.S. patent application serial number 11/443,617 are anticipated by U.S. 7,107,235.

Nike's in-house patent attorney James A. Niegowski at their World Headquarters in Beaverton, Oregon has a key word searchable electronic copy of the specification of U.S. 7,107,235 because I provided him with a copy of the file containing U.S. patent application serial number 10/279,626 on June 15, 2006 by e-mail in connection with Nike, Inc. evaluating their possible interest in my intellectual property. And so, if Nike's patent counsel wished to do so, they could have easily searched and found the information contained in this protest and provided it to the Examiner.

This protest under 37 CFR 1.291(c)(5) has been filed in order to provide constructive assistance to the Examiner. I wish to extend my appreciation for her diligence and patience in handling this case.

In sum, this protest under 37 CFR 1.291(c)(5) is filed to specifically bring to the attention of the Examiner the pertinent portions of U.S. 7,107,235 which render the pending claims in patent application serial number 11/443,617 unpatentable.

## POSSIBLE ERROR IN THE NOTICE OF ALLOWANCE

In the Notice of Allowance mailed on May 23, 2008, the allowed claims indicated were: 1-3, 8-21, 35, 36, **39-44**, 47-53, 55-61, 63-66, 70, and 72-84. However, in the previous Notice of Allowance mailed November 16, 2008, the allowed claims were: 1-3, 8-21, 35, 36, **43-44**, 47-53, 55-61, 63-66, 70, and 72-84. The reasons for this difference in the allowed claims, and also for the allowability of U.S. serial number 11/443,617 were not indicated in the Notice of Allowance mailed on May 23, 2008. However, this possible discrepancy regarding the allowed claims is believed to be irrelevant given the information and constructive assistance which has been provided to the Examiner in this third protest under 37 CFR 1.291(c)(5).

## ACKNOWLEDGEMENT OF PROTEST BY PTO

Please acknowledge receipt of this protest by stamping and returning the green attached self addressed postcard.

## IDENTIFICATION OF PROTESTOR

Respectfully submitted by,

*Robert M. Lyden*
Robert M. Lyden

18261 S. W. Fallatin Loop
Aloha, OR 97007
E-mail: robertlyden@comcast.net
Phone: (971) 219-1200

19

Sheet 1 of 1

| FORM PTO-1449 | | | | Atty. Docket No.: | | Serial No.: 11/443,617 |
|---|---|---|---|---|---|---|
| LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | | | | Applicant: GROVE, et al. | | |
| | | | | Filing Date: May 30, 2006 | | Group Art: 3728 |

U.S. PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Name | Class | Sub Class | Filing Date If Appropriate |
|---|---|---|---|---|---|---|---|
| | AA | 7,107,235 | 9/12/2006 | LYDEN | 705 | 26 | |
| | AB | | | | | | |
| | AC | | | | | | |
| | AD | | | | | | |
| | AE | | | | | | |
| | AF | | | | | | |
| | AG | | | | | | |
| | AH | | | | | | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

FOREIGN PATENT DOCUMENTS

| | | Document No. | Date | Country | Class | Sub Class | Translation Yes    No |
|---|---|---|---|---|---|---|---|
| | AL | | | | | | |
| | AM | | | | | | |
| | AN | | | | | | |

OTHER ART (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | AO | |
| | AP | |
| | AQ | |

| EXAMINER: | DATE CONSIDERED: |
|---|---|

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.