# Rob Lyden

| | |
|---|---|
| **From:** | "Rob Lyden" <robertlyden@comcast.net> |
| **To:** | "Niegowski, Jim" <Jim.Niegowski@nike.com> |
| **Cc:** | "Rob Lyden" <robertlyden@comcast.net> |
| **Sent:** | Friday, May 21, 2010 1:14 PM |
| **Attach:** | Office Action Summary.jpg; Letter to Jim Niegowski re NIKE, April 21, 2010.doc; April 21,2010 Letter to Jim Niegowski re Adidas and NIKE.doc |
| **Subject:** | Rob Lyden re: Your Reply |

May 21, 2010

Jim,

I understand that according to you...

NIKE does not have an interest in purchasing my intellectual property.

However, the nature and substance of your communications and overall handling of this subject over the past month has been such as to lead me to question whether senior level executives at NIKE have been accurately informed about this matter, and also whether the answer you've provided is more about a possible desire within the patents department to cover up what appears to be the largest set of blunders or misbehavior relating to intellectual property to have occured within the sporting goods industry in recent memory.

For any company such as NIKE to file over 20 patents largely based upon the novel features previously disclosed in the filed patent applications of another individual, and in particular, when hard copies of those patent applications are in the company's possession is absurd and unheard of in the sporting goods industry.

Obviously, the fact that NIKE subsequently filed over 20 patents directed to patentable matter contained in my prior patents and patent applications makes clear that NIKE *does* have an interest in my intellectual property. Given the present context and set of circumstances, what your letter seems to communicate is that NIKE is taking a path of obtaining intellectual property without making a full disclosure to patent examiners within the U.S. Patent Office, or by concluding equitable business agreements.

I question whether everyone at NIKE thinks or feels this way...

Accordingly, in fairness to NIKE...I am going to forward this letter to several individuals who I know and respect on campus who may have a different perspective than you about what is important for the NIKE brand, and what constitutes professional behavior in the U.S. Patent Office and also with members of the Oregon business community.

While you did not find it necessary to address the accuracy of each and every statement of alleged fact in providing me with your response, perhaps there is a senior executive at NIKE who will want to get to the bottom of things, and to whom you will be able to provide a full account. In brief, I am giving you the opportunity to be questioned and judged in a private as opposed to a public venue by a jury composed of your superiors and peers on the NIKE campus.

If I don't hear from someone on the campus who shares my concerns about your handling of this matter within the next week, then it would be made clear to me that your response is indeed the position of NIKE. Obviously, it would then be necessary for me to take certain other steps in order to remedy the situation.

Best Regards,

*Rob*

Robert M. Lyden

P.S.  Attached are two documents which I provided to you over the past month that would enable any individual at NIKE having an interest in this subject get to the bottom of things.  Also see below a few remarks on your letter which are highlighted in bold and a blue font.

----- Original Message -----
**From:** Niegowski, Jim
**To:** Rob Lyden
**Sent:** Wednesday, May 19, 2010 3:18 PM
**Subject:** Lyden Patents

Rob:

I am writing to respond to your recent communications inquiring about whether NIKE would like to purchase your intellectual property.   While Nike appreciates your inquiry, NIKE is not interested in purchasing your intellectual property at this time.

**Perhaps, you can help me to better understand the above caveat..."at this time."  Do you really believe that if Adidas purchases or licenses my intellectual property for the "TUNIT" soccer shoe...that NIKE will also somehow be able to purchase the same property a future time?**

 In addition, NIKE has reviewed the fourteen page letter you sent me on April 21, 2010.  That letter, and other recent correspondence from you, includes a number of statements suggesting various improprieties by NIKE with respect to certain of its patents.  NIKE takes such allegations very seriously, and wants to make it clear that it strongly disagrees with your statements suggesting that NIKE has engaged in improper conduct with respect to its patents.

**If you believe I have made any errors of fact or otherwise misinterpreted something, then provide me with such evidence, and I will then apologize to you and gladly amend the statements in question Otherwise, if the shoe fits...wear it.**

Furthermore, on page 2 of your April 21st letter you purport to describe the details of a conversation we had during a lunch that apparently took place several years ago.  You indicate the conversation related to Nike's patent application serial no. 10/349,398 (now US Pat. No. 6,914,596) and one of your patent applications (serial no. 10/279,626; now US Pat. No. 7,107,235).  I do not agree with your description of that conversation.  In any event, as you acknowledge in your letter, Nike disclosed your patent applications (published as 2003/0051378 and 2003/0069807) to the PTO during prosecution of Nike's US Pat. No. 6,915,596.

**Here, I think you are refering to paragraph 3 on page two in the attached letter to you entitled "Letter to Jim Niegowski re Nike, April 12, 2010."  Are you saying that I did not show you Figure 492 from my (now) issued U.S. 7,107,235, or that you did not say "Oh s--t" when you saw the figure?  Yes, NIKE did indeed later cite my patent applications (published as 2003/0051378 and 2003/0069807) to the U.S. Patent Office during prosecution of Nike's US Pat. No. 6,915,596, but you did not share with the patent examiner the relevant information that I had provided to you about where to look in the drawing figures of those applications for the structure you were then seeking to claim, and despite the fact that the information disclosure statement forms used by NIKE include a space for doing so.  In short, you played cute, and essentially handed the patent examiner a haystack...well knowing where the needles were, but you didn't tell her where to look. And so it took my filing 3 protests against NIKE's U.S. 6,915,596 and three later patents in the same chain, and then providing the patent examiner with the information she needed in order to clear things up.  As a result, she rejected 29 of the 34 claims you sought to obtain in pending patent serial number 12/207,309, as being unpatenable over Lyden.  As backup, I will attach page 2 of the last office action dated 12/03/09 as a jpeg file entitled "Office Action Summary" so that you may be reminded of the truth.**

Finally, your recent communications to Nike include numerous other statements regarding various alleged facts. For purposes of responding to you regarding Nike's interest in your intellectual property, it is not necessary for Nike to address the accuracy of each and every such statement of alleged fact. Consequently, please do not assume that Nike agrees with the statements of alleged facts in your communications.

For the time being, I will let others whom I know and respect behind the berm ask you about those "alleged facts." Once again, if I have made any errors of fact, I will apologize and make any needed corrections.

Thank you again for your inquiry.

Best regards,

Jim

Application/Control Number: 12/207,309 Page 2
Art Unit: 3728

### Claim Rejections - 35 USC § 102

1. The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

2. Claims 1-7, 10-12, 14-19, 21-23, 26-29, and 31-33 are rejected under 35 U.S.C. 102(e) as being clearly anticipated by Lyden (7107235).

### Claim Rejections - 35 USC § 103

3. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4. Claims 13, 24, and 34 are rejected under 35 U.S.C. 103(a) as being unpatentable over Lyden '235.

Lyden shows a shoe (as described in the protest document filed in the IDS filed on 10/30/09 by applicant) substantially as claimed except for a textile secured to the upper surface of the foot supporting element. It is well known and conventional to provide textile layers on top of the sole member for comfortable contact with the foot. It would