IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT M. LYDEN,

                  Plaintiff,

    v.

NIKE INC., an Oregon corporation,

                  Defendant.

No. 3:13-cv-00662-HZ

OPINION & ORDER

Robert M. Lyden, Pro Se
18261 SW Fallatin Loop
Aloha, OR 97007

Nathan C. Brunette
Per A. Ramfjord
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204

        Attorneys for Defendant

/ / /

/ / /

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff Robert Lyden brings this action for patent infringement and several common law violations against Defendant Nike, Inc.  Plaintiff Lyden alleges that Defendant Nike has infringed his U.S. Patent No. 8,209,883, "Custom Article of Footwear and Method of Making the Same," and interfered with his ability to market his footwear patents.  Nike moved to dismiss Lyden's common law claims and strike allegations regarding the use of performance enhancing drugs by athletes supported by Nike.  Nike additionally moved to stay the case pending reexamination of the patent.  I grant in part and deny in part the motion to dismiss.  With the exception of the conversion claim, Lyden's common law claims fail to state a claim and do not comply with Rule 8's requirement for a short and plain statement.  I also deny the motion to stay.

## BACKGROUND

Lyden worked for Nike as a "Patents and Inventions Assistant" from 1990 to 1996. Compl. ¶ 16.  He is a named inventor on several design and utility patents assigned to Nike.  Id. at ¶ 30.  Lyden alleges that Nike did not recognize him as a named inventor for other utility patents related to the "FREE athletic shoe."  Id. at ¶ 36.

From 1996 to 1998, Lyden worked as an independent consultant to Nike.  Id. at ¶ 42. Nike did not renew Lyden's contract at the end of 1998.  Id. at ¶ 67.  Lyden continued to share information about his pending patent applications with Nike.  Id. at ¶ 76.  Nike declined to license or buy Lyden's intellectual property.  Id. at ¶ 77.

Lyden is the inventor of U.S. Patent No. 8,209,883 (" '883 patent"), "Custom Article of Footwear and Method of Making the Same".  Id. at ¶ 134.  Lyden alleges that Nike's Flyknit shoe infringes on the '883 patent.  Id. at ¶ 136-39.  The '883 patent is currently under reexamination by the U.S. Patent and Trademark Office ("PTO").  Id. at ¶ 143.

The complaint also includes various allegations of performance enhancing drug use, Nike's fraudulent conduct before the PTO, and patent infringement by Adidas.

STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002).  However, the court need not accept conclusory allegations as truthful.  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (quotation and citations omitted).

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  Id. (citations and footnote omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted).  Additionally, "only a complaint that states a plausible claim for relief

survives a motion to dismiss." Id. at 679.  The complaint must contain "well-pleaded facts"

which "permit the court to infer more than the mere possibility of misconduct." Id.

DISCUSSION

Plaintiff Lyden alleges the following claims:  infringement of the '883 patent, intentional

interference with prospective economic advantage, negligent interference with prospective

economic advantage, conversion, fraud, and unjust enrichment.  Defendant Nike moves to

dismiss only the state common law claims.  Nike also moves to strike allegations that Nike has

promoted the use of performance enhancing drugs.  With respect to the patent infringement

claim, Nike moves to stay the case pending the outcome of the reexamination of the '883 patent.

I.      Motion to Dismiss

Nike argues that Lyden's state law claims are preempted by federal patent law, or

alternatively, Lyden has failed to state a claim.

A.      Preemption

Nike argues that all of Lyden's state law claims are preempted by federal patent law

because the bases of those claims relate to allegations that Nike has infringed on the '883 patent

or has acted fraudulently before the PTO.

"Federal preemption takes three basic forms:  First, Congress may explicitly preempt

state law; second, a federal scheme may occupy a given field and thus preempt state law in that

field; and third, when compliance with both state and federal law is impossible, the conflicting

state law is preempted." Univ. of Colo. Found., Inc. v. Am. Cyanamid Co., 342 F.3d 1298, 1305

(Fed. Cir. 2003).  Regardless of the type of preemption, the key issue is whether the state law

"'stands as an obstacle to the accomplishment and execution of the full purposes and objectives

of Congress.'" Id. (quoting Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 479 (1974).  Patent

law's three purposes are to "(1) to foster and reward invention, (2) to stimulate further innovation, and (3) to ensure free use of ideas in the public domain." Univ. of Colo., 342 F.3d at 1306 (citing Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262 (1979)). Thus, to determine if preemption applies, the relationship between the state law claim and patent law must be analyzed, including the conduct that forms the basis for the claim and the remedy sought.

Nike argues that the state law claims are preempted because all the claims are based on allegations regarding Nike's misconduct before the PTO or infringement of the '883 patent. Def.'s Mem. 6. In support of this argument, Nike provides a string cite of cases, the majority of which are from other district court jurisdictions. Id. at 6-7. Nike fails to explain how each state law claim would be preempted. Because of the lack of analysis for the preemption argument, I decline to address this argument.

B.    Failure to State a Claim

Nike next argues that the state law claims should be dismissed because Lyden has failed to state a claim under 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mem. 8.

1.    Second Claim:  Intentional Interference with Economic Relations

Lyden phrases his claim as "Intentional Interference With Prospective Economic Advantage." Compl. 60. I will refer to the claim as "intentional interference with economic relations" ("IIER"). To state an IIER claim, Lyden must allege "(1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6)

damages." <u>Allen v. Hall</u>, 974 P.2d 199, 202 (Or. 1999) (citing <u>McGanty v. Staudenraus</u>, 901 P.2d 841, 844 (Or. 1995)).

> The following allegations are relevant to this claim:

> In October, 2000, and extending until June 30, 2001, Lyden entered into an "Option Agreement" and also an "Option Agreement: Negotiation Period Extension" with FILA, Inc.…..However, the company went up for sale and a more comprehensive intellectual property license agreement was not concluded.

> On January 17, 2007, Lyden entered into the first phase of an exclusive license agreement regarding his footwear patents with Dash America, Inc., which does business as Pearl Izumi, a Colorado corporation which was then owned by a parent company, Nautilus, Inc.…..However, Nautilus, Inc. suffered business reverses soon afterwards, and then sold Pearl Izumi to Shimano, Inc. in order to cover their financial debts.  As a result, the second phase of the patent license agreement with Pearl Izumi which would have entailed the commercialization of footwear product did not take place, and the "Patent License Agreement,"…was terminated on July 16, 2007.

Compl. ¶¶ 74, 95.  Neither of these allegations supports a claim for IIER.  Lyden does not allege how Nike interfered with Lyden's agreements with FILA or Dash America.  In fact, the allegations indicate that the agreements dissolved because the companies were sold, not because Nike interfered with the relationship.  Nike also argues that the two-year statute of limitations for IIER would preclude both of these agreements from serving as the basis for Lyden's IIER claim.  Def.'s Mem. 10.  I agree.

Lyden also alleges that Nike harmed his ability to secure investors, license his intellectual property, or sell his intellectual property to prospective buyers.  <u>Id.</u> at ¶¶ 156, 190, 208.  These allegations are insufficient to support a claim for IIER.  "[P]laintiff must establish first that there was a contractual or business relationship between plaintiff and a third party in which defendant interfered."  <u>Oregon Life & Health Ins. Guar. Ass'n v. Inter-Regional Fin. Group, Inc.</u>, 967 P.2d 880, 887 (Or. Ct. App. 1998).  "[T]he tort does not protect the business expectations of a single entity."  <u>Id.</u>  Lyden merely alleges that

his ability to secure investors and buyers were harmed.  Lyden does not specify that he

had a business relationship with specific investors or buyers; that Nike interfered with

these relationships; and that the investors and buyers discontinued their relationship with

Lyden because of Nike.  The claim for IIER is dismissed.

        2.      Third Claim:  Negligent Interference with Economic Relations

There is no such cause of action for negligent interference with economic relations.

Numrich v. Ntekpere, No. 3:12-cv-01594-HU, 2013 U.S. Dist. LEXIS 14792 (D. Or. Feb. 4,

2013) ("Oregon has never recognized the tort of 'negligent interference with economic

expectation.'").  This claim is dismissed with prejudice.

        3.      Fourth Claim:  Conversion

"Conversion is an intentional exercise of dominion or control over a chattel which so

seriously interferes with the right of another to control it that the actor may justly be required to

pay the other the full value of the chattel."  Mustola v. Toddy, 456 P.2d 1004, 1007 (Or. 1969).

Lyden alleges that

> Nike, Inc. intended to wrongfully obtain false title to the intellectual property, and
> take public goodwill, company valuation, and potential profit away from Lyden,
> and to instead claim it for Nike, Inc.'s own benefit. The desired and practical
> effect has been to simultaneously harm Lyden's intellectual property and business
> efforts, and to improve Nike, Inc.'s own.  In this regard, Nike, Inc.'s actions
> resemble those of an intellectual property "cattle rustler" which has succeeded in
> converting the intellectual property of Lyden and using it to make and sell
> products under the Nike, Inc. "Swoosh" brand and trademark.

Compl. ¶ 222.  In other words, Lyden alleges that Nike converted his patent rights when Nike

obtained patent protection in its name for Lyden's intellectual property.  As a result of this

conversion, Lyden alleges that he has suffered "loss of profits associated with the launch of a

company…and/or alternatively, the sale or license of Lyden's footwear patents."  Id. at ¶ 226.

Nike argues that conversion claims do not apply to intangible assets such as patents. Def.'s Mem. 11 (citing <u>Vigilante.com, Inc. v. ArgusTest.com, Inc.</u>, No. CV04-413-MO, 2005 U.S. Dist. LEXIS 45999 (D. Or. Sept. 6, 2005). In <u>Vigilante</u>, a decision from this district, the court relied on Black's Law Dictionary to define chattel as a "'moveable or transferable property; personal property; esp. a physical object capable of manual delivery.'" <u>Id.</u> at *44-45. The court concluded that plaintiff could not state a conversion claim for the source code itself, but that a claim for the disks that stored the source code would be viable. <u>Id.</u> at *45.

More recently, another court in this district held that "a license or contractual right to receive a transmitted signal; to rebroadcast the signal; and to determine when, where, and by whom the program contained within the signal can be displayed or exhibited, constitutes a chattel that can be converted." <u>Joe Hand Promotions, Inc. v. Jacobson</u>, 874 F. Supp. 2d 1010, 1019 (D. Or. 2012). In <u>Joe Hand</u>, the court had examined how the Oregon Court of Appeals and district courts in other jurisdictions have addressed whether intangible rights could be chattel. <u>Id.</u> at 1020-21. The court concluded that it is likely that Oregon courts would not limit chattel to tangible property.

The <u>Vigilante</u> court limited its analysis to the definition of "chattel." However, under the definition of "chattel," there are specific types of chattel, including "chattel personal" and "chattel real." Black's Law Dictionary 268 (9th ed. 2009). A "chattel personal" is "[a] tangible good or an intangible right (*such as a patent*)." <u>Id.</u> (emphasis added). Given that "chattel personal" is a type of chattel and that patent rights are an example of chattel personal, I am persuaded by the reasoning in <u>Joe Hand</u> that chattel is not limited to tangible property. Therefore, I do not agree with Nike's argument that Lyden failed to state a claim for conversion because patents are intangible property rights, and therefore are not chattel.

4.      Fifth Claim:  Fraud

The elements of a fraud claim are:  "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury."  Rice v. McAllister, 519 P.2d 1263, 1265 (Or. 1974).  While a mere omission is not actionable in the absence of a duty to speak, no such duty is required where a plaintiff alleges a defendant actively concealed a material fact.  Paul v. Kelley, 599 P.2d 1236, 1238 (1979).  "Any words or acts which create a false impression covering up the truth,…or which remove an opportunity that might otherwise have led to the discovery of a material fact…are classed as misrepresentations, no less than a verbal assurance that the fact is not true."  Id. at 66 (quoting Prosser, Law of Torts § 106, at 695 (4th ed. 1971)).

A claim for fraud must be pled with particularity.  Fed. R. Civ. P. 9(b) ("In alleging fraud…, a party must state with particularity the circumstances constituting fraud…").  Lyden alleges that Nike has committed fraud by filing patents for Lyden's intellectual property under Nike's name and failing to disclose relevant prior art to the PTO.  Compl. ¶¶ 106, 153, 155. Lyden also alleges that Nike's "athlete promotions, advertising, marketing and sales efforts…have been improper and associated with fraud because they have been aided by…performance enhancing drugs[.]"  Id. at ¶ 160.

There are no allegations that Nike made a misrepresentation to Lyden, that Lyden relied on that misrepresentation, and that he was harmed because he relied on that misrepresentation. Lyden alleges only that Nike made misrepresentations to the PTO and the general public.  The claim for fraud is dismissed.

5.    Sixth Claim:  Unjust Enrichment

"The elements of the quasi-contractual claim of unjust enrichment are (1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it."  Cron v. Zimmer, 296 P.3d 567, 577 (Or. Ct. App. 2013) (citing Jaqua v. Nike, Inc., 865 P2d 442, 445 (1993)).  For the last element, an action would be unjust if "(1) the plaintiff had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; or (3) society's reasonable expectations of security of person and property would be defeated by non-payment."  Id. at 578.

The following allegations are relevant to this claim:

Nike, Inc. has been and now is directly infringing the '883 patent in Oregon…by, among other things, manufacturing, using, selling, importing and/or offering for sale footwear that infringe one or more claims of the '883 patent, to the injury of Lyden.

Nike, Inc. has filed numerous patents substantially directed to the same subject matter as the earlier filed and/or issued footwear patents of Lyden, and then committed fraud and inequitable conduct, and violated its duty of disclosure with the U.S. Patent Office.  Nike, Inc.'s actions were intended to wrongfully obtain false title to the same intellectual property and take public goodwill and profits away from Lyden with the intent to injure Lyden's business and instead improve its own.

Compl. ¶¶ 244-45.  There are two bases for Lyden's unjust enrichment claim.  Nike argues that an unjust enrichment claim based on the infringement of the '883 patent is preempted by patent law.  Def.'s Mem. 14.  I agree.  Patent law states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  See 35 U.S.C. § 271.  Lyden alleges these same acts as the basis for his unjust enrichment claim.

Compl. ¶ 244.  Lyden cannot state a claim for unjust enrichment based on the same acts which would constitute patent infringement.

The second basis for Lyden's unjust enrichment claim involves an allegation that Nike has patented subject matter that Lyden has already patented.  This allegation does not state a claim for unjust enrichment.  There are no allegations that Lyden gave Nike a benefit for which Lyden expected payment.  The claim for unjust enrichment is dismissed.

C.      Failure to Comply with Rule 8

Lyden filed a 72-page complaint, which contains allegations that begin in 1990. Plaintiff's complaint fails to comply with Rule 8, which requires that a pleading contain a "*short and plain* statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678 (quotation omitted).

Many of the allegations in the complaint have no bearing on the claims pled.  Nike moved to strike allegations involving performance enhancing drug use within its motion to dismiss.  Because I am dismissing the state law claims, I deny Nike's motion to strike as moot. If Lyden wishes to file an amended complaint to cure the deficiencies previously stated, the complaint must also comply with Rule 8.

II.     Motion to Stay

Nike moved to stay consideration of Lyden's claim for infringement of the '883 patent. A stay is within the discretion of the court.  See Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.").  A court

may grant a motion to stay "in order to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit will not survive reexamination." MercExchange, L.L.C. v. eBay, Inc., 500 F.Supp.2d 556, 563 (E.D. Va. 2007).

"In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." Soverain Software LLC v. Amazon.com, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citing Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)).

Here, a first office action has issued in the reexamination and all of the claims in the '883 patent have been rejected. Brunette Decl. Ex. 2 at 4. Lyden concedes that a stay of the patent infringement claim is not "unreasonable." Pl.'s Resp. 2. Lyden has not argued that a stay would be unduly prejudicial or present a tactical disadvantage. However, I disagree that a stay at this point in the case would be prudent because the pleading have not been finalized.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

12 - OPINION & ORDER

CONCLUSION

Based on the foregoing, Defendant's motion to dismiss (#8) is granted in part and denied in part as follows:  claim three for negligent interference with economic relations is dismissed with prejudice; claims two, five and six for intentional interference with economic relations, fraud, and unjust enrichment are dismissed; and claim four for conversion may proceed. Additionally, the motion to strike (#8) is denied as moot, and motion to stay (#9) is denied. Plaintiff may file an amended complaint within 30 days of this order.

IT IS SO ORDERED.


Dated this _____ day of October, 2013.



_____
MARCO A. HERNANDEZ
United States District Judge