IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT M. LYDEN,

           Plaintiff,

    v.

NIKE INC., an Oregon corporation,
MARK PARKER, CEO of Nike, and
PHILIP KNIGHT, Co-founder of Nike,

           Defendants.

No. 3:13-cv-00662-HZ

OPINION & ORDER

Robert M. Lyden
18261 SW Fallatin Loop
Aloha, OR 97007

      Pro Se Plaintiff

Nathan C. Brunette
Per A. Ramfjord
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Robert Lyden brings this action for patent infringement and several common law violations against Defendants Nike, Inc., Mark Parker, the CEO of Nike, and Philip Knight, the co-founder of Nike. Plaintiff alleges that Defendant Nike has infringed his U.S. Patent No. 8,209,883, "Custom Article of Footwear and Method of Making the Same," and interfered with his ability to license and market his footwear patents. Plaintiff's initial complaint and first amended complaint were previously dismissed with leave to amend. Plaintiff filed a second amended complaint. Defendants move to dismiss the conversion, fraud, and unfair competition/RICO claims because the claims are preempted, fail to state a claim, or are time-barred. I agree that Plaintiff's claims are either preempted, fail to state a claim, or are barred by the statute of limitations. Defendants' motion to dismiss [28] is granted.

BACKGROUND

Lyden worked for Nike as a "Patents and Inventions Assistant" from 1990 to 1996. Second Am. Compl. ¶ 18. He is a named inventor on several design and utility patents assigned to Nike. Id. at ¶ 25. Lyden alleges that Nike did not recognize him as a named inventor for other utility patents related to the "FREE athletic shoe." Id. at ¶¶ 26-27.

From 1996 to 1998, Lyden worked as an independent consultant to Nike. Id. at ¶ 30. Nike did not renew Lyden's contract at the end of 1998. Id. at ¶ 34. In March 2002, Lyden entered into an agreement with Nike, such that Lyden would share information about his issued and pending patent applications. Id. at ¶ 38. In December 2002, Nike declined to license or buy Lyden's intellectual property. Id. at ¶ 39.

Lyden is the inventor of U.S. Patent No. 8,209,883 ('883 patent), "Custom Article of Footwear and Method of Making the Same". Id. at ¶ 53. Lyden alleges that Nike's Flyknit shoe

infringes on the '883 patent.  Id. at ¶ 59.  The '883 patent is currently under reexamination by the

U.S. Patent and Trademark Office (PTO).  Id. at ¶ 54.  Besides the patent infringement claim,

Plaintiff states three other claims in his second amended complaint:  (1) conversion, (2) fraud,

and (3) unfair competition, business, and trade practices/RICO.  Id. at 17, 30, 35.

STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the claims.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "All allegations of material

fact are taken as true and construed in the light most favorable to the nonmoving party."  Am.

Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002).  However, the

court need not accept conclusory allegations as truthful.  Warren v. Fox Family Worldwide, Inc.,

328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory

allegations which are contradicted by documents referred to in the complaint, and we do not

necessarily assume the truth of legal conclusions merely because they are cast in the form of

factual allegations.") (quotation and citations omitted).

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff alleges the "grounds"

of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative

level…on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)[.]"  Id. (citations and footnote omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct." Id.

DISCUSSION

Defendants move to dismiss all of Plaintiff's claims, with the exception of the patent infringement claim. Defendants argue that the conversion claim is preempted by federal patent law because it is based on allegations of misconduct before the PTO during prosecution of various patents. Regarding the fraud and unfair competition, business, trade practices/RICO claims, Defendant argues that Plaintiff fails to state a claim or alternatively, that the statute of limitations has passed.

I.      Claim Two—Conversion

The following allegations form the basis of the conversion claim.

- Plaintiff shared several of his patents and patent applications with Nike in 2002. Id. at ¶¶ 38, 70.
- Nike declined to purchase or license Plaintiff's intellectual property. Id. at ¶ 39.
- In 2005 and 2010, Plaintiff accused Nike of patenting subject matter that Plaintiff had revealed to Nike in 2002. Id. at ¶¶ 70, 71, 74.
- In 2010, Nike again declined to purchase or license Plaintiff's patents. Id. at ¶ 75.
- Nike failed to name Plaintiff as an inventor on its patent applications and failed to disclose relevant prior art, which violates a duty of disclosure to the PTO. Id. at ¶¶ 80-81.
- Plaintiff alleges that Nike has rebranded Plaintiff's inventions as its own. Id. at ¶ 81.
- Because of Nike's actions, Plaintiff has been unable to secure investors for his company or license or sell his patents. Id. at ¶ 85.
- Plaintiff seeks lost profits for his inability to sell or license his patents and the diminished value of his intellectual property. Id. at ¶¶ 108, 111.

Defendants argue that the conversion claim is preempted by patent law.

"Federal preemption takes three basic forms:  First, Congress may explicitly preempt state law; second, a federal scheme may occupy a given field and thus preempt state law in that field; and third, when compliance with both state and federal law is impossible, the conflicting state law is preempted."  Univ. of Colo. Found., Inc. v. Am. Cyanamid Co., 342 F.3d 1298, 1305 (Fed. Cir. 2003).  Regardless of the type of preemption, the key issue is whether the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  Id. (quoting Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 479 (1974).  Patent law's three purposes are to "(1) to foster and reward invention, (2) to stimulate further innovation, and (3) to ensure free use of ideas in the public domain."  Univ. of Colo., 342 F.3d at 1306 (citing Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262 (1979)).  Thus, to determine if preemption applies, the relationship between the state law claim and patent law must be analyzed, including the conduct that forms the basis for the claim and the remedy sought.

Plaintiff alleges that Defendant Nike converted his intellectual property by securing patents from the PTO for the same subject matter as Plaintiff's patents and patent applications that he had shared with Nike in 2002.  Plaintiff also alleges that Nike failed to disclose Plaintiff's intellectual property as prior art before the PTO.  The damages that Plaintiff seeks are based on Nike's commercialization of its patents, allegedly of the same subject matter as Plaintiff's patents, before Plaintiff could license or market his patents.

Patent law establishes that a party infringes a patent when it "makes, uses, offers to sell, or sells any patented invention, within the United States."  35 U.S.C. § 271(a).  Plaintiff's conversion claim is premised on Nike's commercialization of its patents, e.g., making, selling, or using the patented subject matter—conduct which serves as the bases for damages in a patent infringement claim.  "If a plaintiff bases its tort action on conduct that is protected or governed

by federal patent law, then the plaintiff may not invoke the state law remedy, which must be *preempted for conflict with federal patent law*." Hunter Douglas, Inc. v. Harmonic Design, 153 F.3d 1318, 1335 (Fed. Cir. 1998) (emphasis added). Plaintiff's conversion claim is essentially a patent infringement claim, and thus is preempted by patent law.

Plaintiff argues that an exception to preemption applies. Pl.'s Resp. 15. "[F]ederal patent law bars the imposition of liability for conduct before the PTO unless the plaintiff can show that the patentholder's conduct amounted to fraud or rendered the patent application process a sham." Hunter Douglas, 153 F.3d at 1336. However, the cases cited by the Hunter court show that the exception is applied in limited circumstances. Id. (citing Nobelpharma Ab v. Implant Innovations, 141 F.3d 1059, 1068 (Fed. Cir. 1998), Abbott Labs. v. Brennan, 952 F.2d 1346, 1356 (Fed. Cir. 1991)). In Nobelpharma, a "patentee who brings an infringement suit may be subject to antitrust liability for the anti-competitive effects of that suit if the alleged infringer…proves…that the asserted patent was obtained through knowing and willful fraud[.]" 141 F.3d at 1068. In Abbott Labs, "an asserted abuse of process before the Patent and Trademark Office is not remediable by state action in tort, at least unless it is shown that the entire federal agency action was a 'sham.'" 952 F.2d 1356. The circumstances of Nobelpharma and Abbot Labs are not similar or analogous to Plaintiff's allegations of conversion. Application of the narrow exception to preemption is not warranted. Plaintiff's claim for conversion is dismissed. Because amendment would be futile, the dismissal is with prejudice.

II.    Claim Three—Fraud

The following allegations form the basis of Plaintiff's fraud claim.

- In March 2002, three inventors, one of whom was Plaintiff, and Defendant Nike entered into an "Intellectual Property and Prototype Agreement." Second Am. Complaint ¶ 115, Ex. I [23-5].

- The purpose of the agreement was to allow Nike to evaluate and assess the inventors' technology. Second Am. Compl. Ex. I at 1.
- Plaintiff alleges that Nike falsely represented that it entered the 2002 agreement in good faith. Second Am. Compl. ¶ 116.
- Nike acted in "bad faith" by refusing to license Plaintiff's intellectual property and instead began filing patent applications for the same subject matter as Plaintiff's intellectual property. Id.
- Between 2002 and the present, Nike made false statements and gave false assurances that Nike intended to conduct "due diligence" regarding Nike's patent applications that "effectively converted" Plaintiff's intellectual property. Id. at ¶¶ 119-120, 126.

The elements of a fraud claim are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." Rice v. McAllister, 519 P.2d 1263, 1265 (Or. 1974). While a mere omission is not actionable in the absence of a duty to speak, no such duty is required where a plaintiff alleges a defendant actively concealed a material fact. Paul v. Kelley, 599 P.2d 1236, 1238 (1979). "Any words or acts which create a false impression covering up the truth,…or which remove an opportunity that might otherwise have led to the discovery of a material fact…are classed as misrepresentations, no less than a verbal assurance that the fact is not true." Id. at 66 (quoting Prosser, Law of Torts § 106, at 695 (4th ed. 1971)). A claim for fraud must be pled with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud…, a party must state with particularity the circumstances constituting fraud….").

Plaintiff alleges two misrepresentations by Nike: (1) Nike represented that it entered into the 2002 agreement in good faith and (2) Nike represented that it would conduct due diligence regarding whether Nike had "converted" Plaintiff's intellectual property. Nike argues that the fraud claim is barred by the statute of limitations. Fraud claims in Oregon are subject to a two-year statute of limitations. ORS § 12.110(1). The statute of limitations period begins upon

discovery of the fraud, id., or when plaintiff should have known of the fraud, Duyck v. Tualatin Valley Irrigation Dist., 742 P.2d 1176, 1180 n4 (Or. 1987).

I agree that Plaintiff's fraud claim is barred by the two-year statute of limitations. Plaintiff alleges that the first misrepresentation occurred in 2002, when the parties entered into the agreement. Then three years later, in 2005, Plaintiff learned that Nike allegedly patented subject matter that he had disclosed to Nike as a consequence of the 2002 agreement. Second Am. Compl. ¶ 70. Plaintiff met with Nike in 2005 to discuss the "converted" intellectual property. Id. at ¶ 71. Plaintiff alleges the second misrepresentation occurred at that meeting because Nike stated it would "conduct due diligence" in the matter. Id. 72. Plaintiff later discovered that Nike had not taken any action after the 2005 meeting, and in April 2010, again met with Nike to discuss the matter. Id. at ¶ 74. In May 2010, Nike rejected Plaintiff's offer to license or buy his intellectual property. Id. at ¶ 75. In short, (1) Plaintiff knew by 2005 that Nike had not entered into the 2002 agreement in good faith and (2) Plaintiff knew by May 2010 that Nike had falsely represented in 2005 that it would conduct due diligence. Plaintiff filed this case in April 2013. Neither of the alleged misrepresentations can support a fraud claim because Plaintiff discovered the misrepresentations more than two years before he filed suit. Accordingly, the fraud claim is barred by the statute of limitations and dismissed. The dismissal is with prejudice because amendment would be futile.

III.    Claim Four—Unfair Competition, Business, Trade Practices/RICO

Plaintiff's fourth claim is titled "Unfair Competition, Business, and Trade Practices/RICO." Second Am. Compl. 35. Because it is difficult to discern the claim based on the title alone, I look to Plaintiff's allegations. Plaintiff alleges the following in support of his fourth claim:

- Nike's conversion of Plaintiff's intellectual property is a violation of ORS §§ 646.607, 646.608 and Section 5 of the Federal Trade Commission Act. Second Am. Compl. ¶¶ 134-35.
- Nike's conversion of Plaintiff's intellectual property is theft in violation of ORS §§ 166.720, 164.015, 164.085, 164.095 and violates federal racketeering laws under 18 U.S.C. §§ 1962, 2314, 2315. Id. at ¶ 136.
- Nike's conversion of Plaintiff's intellectual property was conducted via mail and electronic communications to the PTO. This conduct is mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. Id. at ¶ 137.
- Nike provides information and financial support regarding performance enhancing drugs to its promotional athletes. This conduct violates ORS §§ 646.607, 646.608, Section 5 of the Federal Trade Commission Act, and 15 U.S.C. § 45. Id. at ¶ 144-45.
- Nike's support of "cheating in sport" with performance enhancing drugs is also theft under ORS §§ 166.720, 164.015, 164.085, 164.095 and violates federal racketeering laws under 18 U.S.C. §§ 1962, 2314, 2315. Id. at ¶ 150.
- In 1986, Nike "seized the personal and medical records of athletes" at a facility in violation of ORS § 162.295 (tampering with physical evidence). Id. at ¶ 158.
- In 1983, Plaintiff learned that Nike was supporting the use of performance enhancing drugs. Id. at ¶ 153. In 1983 – 1986 and 1997, Plaintiff encouraged Nike to deal with the performance enhancing drugs problem. Id. at ¶¶ 160, 170.
- Between 1995 and 1997, Defendant Knight was present in a room when a doctor suggested to an athlete that she use DHEA. Id. at ¶ 194.
- In 1997, Knight made remarks to the press supporting changes to drug testing for runners. Id. at ¶ 195.
- In 1999, Knight knew that Nike provided support to an athlete's lawsuit against "USOC and IAAF." Id. at ¶ 196.
- Plaintiff alleges that there is proximate cause between Nike's conduct of "cheating in sports" and damage to Plaintiff's company and other rival companies. Id. at ¶ 206.

Plaintiff's allegations in support of his fourth claim can be divided into two categories: (1) the conversion of his intellectual property and (2) Nike providing support to promotional athletes to use performance enhancing drugs.

Regarding the allegations of conversion or theft of Plaintiff's intellectual property, I have already ruled that Plaintiff's conversion claim is preempted by federal patent law. Plaintiff cannot allege conversion to serve as the basis for another claim. Moreover, Plaintiff concedes that he is limited to bringing a claim under ORS § 646.608, as many of the statutes that Plaintiff cites in his allegations do not allow for an individual to enforce those statutes. Pl.'s Resp. 18, 23. Under ORS § 646.608, Oregon's Unlawful Trade Practices Act (UTPA), a person "engages in an

unlawful practice if in the course of the person's business" the person commits various acts listed in the statute.  Plaintiff clarifies in his response that he believes Nike committed unlawful business or trade practices by "passing off" products and patents as its own instead of recognizing Plaintiff as the correct inventor.  Pl.'s Resp. 24-26.  In addition to failing to state a claim, Plaintiff's UTPA claim is barred by the one-year statute of limitations.  ORS § 646.638(6) ("Actions brought under this section must be commenced within one year after the discovery of the unlawful method, act or practice.").  As explained earlier, by 2005, Plaintiff discovered that Nike had allegedly converted his intellectual property.

As for the allegations involving Defendants Nike and Knight's support of performance enhancing drugs among its athletes, Plaintiff argues that this conduct supports federal and state racketeering claims.  I disagree.

The Racketeer Influenced and Corrupt Organizations Act (RICO) prohibits certain conduct involving a "pattern of racketeering activity."  18 U.S.C. § 1962.  RICO allows for a private right of action to "[a]ny person injured in his business or property by reason of a violation" of RICO's prohibited activities.  18 U.S.C. § 1964(c).  The list of activities that would constitute a "racketeering activity" is exhaustive.  18 U.S.C. § 1961(1).  For example, racketeering activities include acts involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance.  Id.  Although Plaintiff's drug-related allegations refer to Defendants Nike and Knight, a RICO claim is brought against an individual, not the "enterprise" that the individual controls.  See 18 U.S.C. § 1962(a)-(d) (activities are unlawful with respect to a "person").  Therefore, Plaintiff's RICO claim is limited to Defendant Knight and his conduct.

The allegations involving Knight consist of the following:  he was present in a room when a doctor suggested to an athlete that she use DHEA, he made remarks to the press supporting changes to drug testing for runners, and he knew that Nike provided support to an athlete's lawsuit against "USOC and IAAF."  These allegations are incapable of supporting a RICO claim, as none of these allegations are remotely related to any of the prohibited racketeering activities in 18 U.S.C. § 1961(1).  Plaintiff also fails to sufficiently plead proximate cause—to show that the alleged RICO violation was the proximate cause of Plaintiff's injury. Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged."  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006) (quotation omitted).  An allegation that "each dollar" that goes to Knight is "one dollar less" for Plaintiff is insufficient to allege proximate cause.  See id. at 460-61 (motion to dismiss RICO claim affirmed because proximate cause requirement was not properly alleged).  Finally, Plaintiff's claim is also likely barred by RICO's four-year statute of limitations.  Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. Cal. 2001) ("The statute of limitations for civil RICO actions is four years.").  As early as 1983, Plaintiff alleges he learned that Nike supported the use of performance enhancing drugs; and as late as 1997, he encouraged Nike to deal with the problem. Plaintiff's state RICO claim fails for the same reasons.  Plaintiff's fourth claim is dismissed. Because amendment would be futile, the dismissal is with prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

CONCLUSION

Based on the foregoing, Defendant's motion to dismiss [28] is granted.  Plaintiff's

second, third, and fourth claims are dismissed with prejudice.

IT IS SO ORDERED.

Dated this _____ day of June, 2014.


MARCO A. HERNANDEZ
United States District Judge

12 - OPINION & ORDER